

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

---

### NO. 2-06-327-CV

---

JEFF GOODIN AND PHILIP
GOODIN

APPELLANTS

V.

MARSHA A. JOLLIFF,
JIMMIE JOLLIFF, AND H.V.G.C.,
INC., A TEXAS CORPORATION

APPELLEES

------------

FROM THE 158TH DISTRICT COURT OF DENTON COUNTY

------------

## OPINION

------------

This case involves a dispute over the ownership of real property and the

terms of employment of appellants Jeff and Philip Goodin by appellee H.V.G.C.,

Inc., which is owned by appellee Marsha A. Jolliff. In five issues, the Goodins

contend that there is legally and factually insufficient evidence to support the

jury's award of $10,000 to H.V.G.C. for Jeff's breach of contract; that the

$5,000 award of attorney's fees to H.V.G.C. should be vacated because there

is no evidence of presentment; that the trial court should have entered a declaratory judgment in the Goodins' favor that the Non-Competition Agreements they signed in favor of H.V.G.C. are invalid under the Texas Business and Commerce Code; that the Goodins are entitled to attorney's fees in connection with a declaratory judgment regarding the Non-Competition agreements; and that the trial court erred by ordering the release of cash deposited in lieu of a bond to Marsha for the benefit of H.V.G.C. and appellee Jimmie Jolliff. We affirm in part and reverse in part.

**Background Facts**

H.V.G.C. hired Jeff as an employee in January 2000. H.V.G.C. is engaged in the business of directional drilling, which involves drilling underground tunnels for utilities, such as water lines or telephone cable. After working for H.V.G.C. for a little over a year, Jeff terminated his employment relationship with H.V.G.C. to become a subcontractor. As part of his agreement with H.V.G.C., Jeff was responsible for paying his own insurance and obtaining his own crew; however, because he was unable to afford equipment of his own, he used H.V.G.C.'s equipment. On April 30, 2001, he signed a Subcontractor Agreement, Non-Competition Agreement, and Property Agreement. In the Subcontractor Agreement, he agreed to be responsible for his own negligence, to use H.V.G.C. equipment for H.V.G.C. jobs only, and to

2

indemnify H.V.G.C. for losses in connection with his work. In the Non-Competition Agreement, he agreed that for a period of five years, he would not "directly or indirectly start a competing business, work for [H.V.G.C.'s] competitors, solicit [H.V.G.C.'s] customers, recruit [H.V.G.C.'s] current employees, or disclose trade secrets or confidential information regarding [H.V.G.C.]." The Property Agreement concerned Jeff's use of H.V.G.C.'s personal property. It made Jeff responsible for all repairs to H.V.G.C.'s personal property, including equipment, provided that Jeff was prohibited from lending property to another person or from using H.V.G.C.'s property on jobs for other customers, and obligated Jeff to immediately return any of H.V.G.C.'s property upon termination of employment or upon H.V.G.C.'s request.

Jeff worked on a job in San Antonio for H.V.G.C. in 2003 and early 2004. It was a tough job, and he was having trouble financially. According to Jeff, at the end of 2003, before the San Antonio job was finished, he went back to work for H.V.G.C. as an employee, but H.V.G.C. contends that he remained a subcontractor. Regardless, he continued to work for H.V.G.C. In spring 2004, he returned to North Texas and eventually began living on ten acres in Justin owned by Marsha.[1] In summer 2004, Jeff's son Philip moved

---

[1] At trial, the Goodins contended that the Jolliffs had agreed that they could buy the property; the Jolliffs disputed their claim, and the jury agreed

3

to Texas. He started working for H.V.G.C. as well.[2] In the fall of 2004, Philip bought two mobile homes and moved them onto Marsha's property.

In late 2004 or early 2005, Jeff and Philip each signed a Subcontractor Agreement, Non-Competition Agreement, and Property Agreement with H.V.G.C. that were the same as the ones Jeff had previously signed. Jeff contended that Marsha had lost his first ones, but Marsha contended that she was just updating her records. Jeff quit working for H.V.G.C. in March 2005 after an argument with Jimmie; he then went to work for a former customer of H.V.G.C.'s, Dambold & Wilson Pipeline Construction, Inc. Philip continued working for H.V.G.C. for about another week, but he quit too and also went to work for Dambold & Wilson. Although they no longer worked for H.V.G.C., the Goodins continued to live on Marsha's property.

In April 2005, Jimmie hand delivered a letter to the Goodins at Marsha's property, which stated that if they did not move off the property, the Jolliffs would begin eviction proceedings. Marsha filed a forcible detainer suit in the justice of the peace court; the court awarded possession of the property to Marsha. The Goodins appealed the judgment to the county court, which also

with the Jolliffs. The Goodins do not dispute this finding on appeal.

[2] The parties also disputed at trial whether Philip was an employee or subcontractor of H.V.G.C.

4

ruled in Marsha's favor. The Goodins then filed suit against the Jolliffs in the 158th District Court of Denton County, claiming that they had contracted to buy the property from Marsha and that they were entitled to possession, damages, or both. They also sought a declaratory judgment that the Non-Competition Agreements they had signed were invalid[3] and reimbursement for improvements they claimed they had made to the property. The Goodins also requested and obtained a temporary injunction prohibiting Marsha from evicting them from the property during the pendency of their suit in the 158th District Court; their attorney deposited $1,500 cash in lieu of a cost bond as required by civil procedure rule 684. TEX. R. CIV. P. 684. Marsha, Jimmie, and H.V.G.C. filed counterclaims against the Goodins for trespass, nuisance, fraud, and breach of the Subcontractor Agreement, Non-Competition Agreement, and Property Agreement.

A jury heard the case in February 2006. After hearing all the evidence, the jury declined to grant the Goodins relief on any of their claims. As to H.V.G.C.'s claims, the jury found that Jeff had breached only the Property Agreement and awarded H.V.G.C. $10,000 for that breach. It also found that

---

[3] H.V.G.C. had obtained a temporary restraining order "TRO" on the basis of the Non-Competition Agreements prohibiting the Goodins from working for Dambold Wilson. The TRO was not extended into a temporary injunction, however.

Jeff committed fraud, but it did not award any damages for that finding. Finally, the jury awarded H.V.G.C. $5,000 in attorney's fees for trial. The jury did not award Marsha or Jimmie any damages.

After hearing numerous post-verdict motions, the trial court entered a judgment on the jury's findings. It also released the $1,500 cash in lieu of bond that had been deposited by the Goodins' attorney to secure the temporary injunction to Marsha for the benefit of Jimmie and H.V.G.C. Jeff appeals the jury's verdict on damages and attorney's fees, and Jeff and Philip appeal the trial court's refusal to enter a declaratory judgment and award them attorney's fees in connection with their claim that the Non-Competition Agreements are invalid. In addition, they both challenge the trial court's award of the temporary injunction security to Marsha for the benefit of Jimmie and H.V.G.C.

### Sufficiency of Evidence of Damages

Jeff complains in the first issue that there is no pleading and no evidence to support the award of $10,000 in damages to H.V.G.C. for his breach of the Property Agreement.

*Standard of Review*

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered

6

to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable fact-finder could and disregard evidence contrary to the finding unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

Absent an objection to the jury charge, the sufficiency of the evidence is reviewed in light of the charge submitted. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 715 (Tex. 2001); *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 71 (Tex. 2000). However, when a party properly objects to a jury question, we review the sufficiency of the evidence in light of the charge the trial court should have submitted. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 530 (Tex. 2002); *Allen v. Am. Gen. Fin., Inc.*, No. 04-06-00273-CV, 2007 WL 4180145, at *8 (Tex. App.—San Antonio Nov. 28, 2007, pet. filed).

*Analysis*

The pertinent part of the charge asked the jury as follows:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate *H.V.G.C., Inc.* for its damages, if any, that resulted from the breach of the Property Agreement(s):

. . . .

Consider the following elements of damages, if any, and none other:

1. Loss of use of The Property;
2. Increase in taxes due to mobile homes being on The Property; and
3. Replacement cost of the Ditch Witch Sub Site Locator. [Emphasis added.]

The jury answered, "$10,000."

Before the charge was submitted, the Goodins objected to the submission of the "loss of use and increase in taxes purportedly resulting from mobile homes being placed on the property . . . . These allegations are for breach of a property agreement which, necessarily, by its terms does not include real property; therefore, there is no actionable theory and no evidence to support the submission." After the jury's verdict, the Goodins filed a motion to disregard jury findings in which they argued that loss of use of the property and increased taxes are not proper measures of damages for breach of contract as alleged and that there is no competent evidence of the replacement cost for the

8

Ditch Witch Sub Site Locator.  They make the same arguments on appeal. More specifically, they note that H.V.G.C.'s pleadings alleged only that Philip took the locator and that there was no evidence at trial that Jeff took the locator. They also contend that even if there was competent evidence that Jeff took the locator, there is no evidence to support the value of the locator.  As to the other two elements of damages, the Goodins contend that the Property Agreement, "[b]y its terms, . . . only applies to personal property belonging to" H.V.G.C.[4]  Accordingly, H.V.G.C. could not claim damages to Marsha's real property because the Property Agreement did not cover her property, only H.V.G.C.'s personal property.  The Goodins contend that H.V.G.C. failed to plead any damages to its personal property.

The Property Agreement reads as follows, in pertinent part:

## I.

## USE OF EMPLOYER'S PROPERTY

During the term of employment, **SUBCONTRACTOR** [Jeff] will have access to and become familiar with various *personal property*, and will be responsible for all and any repairs to and including, but not limited to, tools, equipment, motor vehicles, pagers, telephones, and supplies owned by the **EMPLOYER** [H.V.G.C.] and regularly used in the operation of the business of the **EMPLOYER**.  The **SUBCONTRACTOR** shall not lend any property to another person, directly or indirectly, not use the

---

[4] The Goodins objected to the charge on this basis in the trial court.

9

property in any way for the personal use either during the term of employment or at any time thereafter, except as required in the course of his/her employment. Monies may not be earned for **SUBCONTRACTOR** using **EMPLOYER'S** property. Monies will be awarded to **EMPLOYER** as compensation for violation of this agreement. All property shall remain the exclusive property of the **EMPLOYER** and shall not be removed from the premises of the **EMPLOYER** under any circumstances without the prior consent of the **EMPLOYER**.

**II.**

**RETURN OF EMPLOYER'S PROPERTY**

Immediately upon termination of employment or whenever requested by the **EMPLOYER**, **SUBCONTRACTOR** shall immediately deliver to the **EMPLOYER** all property in the **SUBCONTRACTOR'S** possession or under **SUBCONTRACTOR'S** control, belonging to the **EMPLOYER**, including, but not limited to, tools, equipment, motor vehicles, pagers, telephones, supplies, and other personal property owned by **EMPLOYER**, at: [employer's address], in good condition, ordinary wear and tear excepted. Compensation for property not returned or damaged will be given to **EMPLOYER** through payroll deduction and/or retainage, if necessary. [Emphasis added.]

We agree that the unambiguous, plain language of the Property Agreement shows that it applies only to H.V.G.C.'s personal property.[5] *See*

*J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003); *Heil Co. v. Polar Corp.*, 191 S.W.3d 805, 809–10 (Tex. App.—Fort Worth 2006, pet.

---

[5] Although the language of the agreement is unambiguous, our conclusion is supported by the fact that there was no evidence at trial that H.V.G.C. owned any real property; the only property Jeff used that was owned by H.V.G.C.—as opposed to Marsha—was personal property and equipment related to his subcontracting work.

denied). Marsha was not a party to the Property Agreement in an individual capacity, and there is no evidence that H.V.G.C. had any ownership in Marsha's real property. Thus, as the Goodins pointed out to the trial court, the jury could not properly consider any increase in taxes due to mobile homes being on Marsha's real property in answering this question. But, contrary to the Goodins' assertion to the trial court, loss of use damages are proper with respect to personal property. *See, e.g., Owen Dev. Co. v. Calvert*, 302 S.W.2d 640, 641–42 (Tex. 1957); *3-C Oil Co. v. Modesto P'ship*, 668 S.W.2d 741, 751–52 (Tex. App.—Austin 1984, writ ref'd n.r.e.). Accordingly, we must determine whether there is sufficient evidence supporting the jury's verdict as to the other two categories of damages.

In its Second Amended Counterclaim, H.V.G.C. contended that Jeff breached the part of the Property Agreement prohibiting him from using H.V.G.C.'s property for personal purposes. H.V.G.C. also alleged more specifically that Jeff "used an [H.V.G.C.] credit at a C&O Equipment Rental for a backhoe rental and then proceeded to conduct personal construction work on the Land [Marsha's property]."

The usual measure of damages for loss of use of injured property is the reasonable cost of renting a replacement. *Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 465 (Tex. App.—Dallas 2006, pets. denied).

11

Here, the contract itself also provides that Jeff would be responsible for the costs of any necessary repairs to equipment he used and that he would be liable to H.V.G.C. for the full amount of any compensation he received by using H.V.G.C.'s equipment on jobs for customers other than H.V.G.C.

H.V.G.C. presented evidence at trial that Jeff had incurred expenses for equipment repairs as follows: 3/25/2003 "CASE/NAPA/REPAIR TO PETERBILT" in the amount of $1,131.32; 6/6/2003 "HVGC, INC. SHOP INV-REPAIRS" in the amount of $1,474.87; "02/16/05 Damage Repairs to machine JG used -ck. 6639" in the amount of $1,320.00; "02/25/05 Damage repairs to JG machine- ck. 6667" in the amount of $1,060.00. It also introduced evidence that Jeff had used H.V.G.C. equipment for a non-H.V.G.C. job for Y & O Services, Inc., for which Jeff was paid $3,106.62. These amounts total $8,092.81. Jimmie testified that Jeff damaged three down hole motors during the San Antonio job because he failed to maintain them properly. Jimmie estimated that each of these motors would cost around $10,000 at the time they had to be replaced although he also testified that the price had come down to maybe $5,000 or $6,000 each by the time of trial. Finally, Jeff admitted that he used H.V.G.C.'s truck, a track hoe, and the backhoe that H.V.G.C. had rented from C&O Equipment for the improvements that he and Philip made to Marsha's property.

12

Based on the foregoing, we conclude and hold that the jury's $10,000 damage award is supported by both legally and factually sufficient evidence. *See Mayberry v. Tex. Dep't of Agric.*, 948 S.W.2d 312, 317 (Tex. App.—Austin 1997, writ denied) (holding that jury has discretion to award damages within the range of evidence presented at trial). We overrule the first issue.

**Attorney's Fees**

In the second issue on appeal, Jeff contends that H.V.G.C. is not entitled to attorney's fees for his breach of the Property Agreement. Specifically, he contends that H.V.G.C. failed to prove that the claim for attorney's fees was presented to Jeff prior to trial as required by section 38.002 of the civil practice and remedies code. TEX. CIV. PRAC. & REM. CODE ANN. § 38.002(2) (Vernon 2002).[6]

A party seeking to recover attorney's fees must present the claim to the opposing party. *Id*. The purpose of presentment is to allow the person against whom the claim is asserted an opportunity to pay within thirty days of receiving

---

[6] H.V.G.C. contends that Jeff failed to preserve this issue for review; however, he specifically challenged the attorney's fees finding on the presentment ground in his postverdict motion to vacate the jury's findings. *See Jim Howe Homes, Inc. v. Rogers*, 818 S.W.2d 901, 905 (Tex. App.—Austin 1991, no writ) (holding that raising failure-to-present issue for first time in JNOV was sufficient to preserve error for appeal).

13

notice of the claim, thereby avoiding the obligation to pay attorney's fees. *Carr v. Austin Forty*, 744 S.W.2d 267, 271 (Tex. App.—Austin 1987, writ denied). The party seeking attorney's fees must plead and prove that he or she presented a contract claim to the opposing party, and the opposing party failed to tender performance. *See id*. No particular form of presentment is required; "present" means simply a demand or request for payment. *Jim Howe Homes, Inc. v. Rogers*, 818 S.W.2d 901, 905 n.3 (Tex. App.—Austin 1991, no writ). Oral presentment of a claim is sufficient to satisfy the requirement. *Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex. 1981). However, neither the filing of a suit, nor the allegation of a demand in the pleadings can, alone, constitute presentment of a claim or a demand that a claim be paid. *Austin Forty*, 744 S.W.2d at 271.

Here, H.V.G.C. filed a counterclaim in which it specifically alleged that Jeff had breached the Property Agreement and pled for attorney's fees as damages for that breach.[7] However, the pleading did not allege that the claim

---

[7] Although H.V.G.C. claims that Jeff should have filed a verified denial of presentment, such a pleading was not necessary due to H.V.G.C.'s failure to allege presentment in its pleading. *See* TEX. R. CIV. P. 93 (requiring verified pleading alleging "[t]hat notice and proof of loss has not been given *as alleged*"); *cf. Wallace v. Ramon*, 82 S.W.3d 501, 505 (Tex. App.—San Antonio 2003, no pet.) (holding that lack of verified denial "dispenses with the necessity to provide proof of notice" when the claimant has alleged presentment in its pleadings).

14

had been presented to Jeff and that he had failed to pay it.[8] H.V.G.C. contends that it orally presented its claim for breach of the Property Agreement to Jeff in pretrial depositions. But H.V.G.C. has not cited any evidence of this oral presentment in the record, and after a careful review of the record, we find no such evidence; thus, we conclude that there is no evidence of presentment upon which an award of attorney's fees can be based. *See Llanes v. Davila*, 133 S.W.3d 635, 641 (Tex. App.—Corpus Christi 2003, pet. denied); *cf. Jones*, 614 S.W.2d at 100 (holding that sufficient evidence of oral presentment of claim existed when transcript of telephone conference supporting presentment contention was admitted into evidence). We sustain Jeff's second issue.

## Validity of Non-Competition Agreements

In their third issue, the Goodins contend that the trial court erred by refusing to enter a declaratory judgment that the Non-Competition Agreements they signed in 2004 are invalid under section 15.50(a) of the Texas Business and Commerce Code.

Section 15.50(a) provides that

---

[8] When H.V.G.C.'s attorney cross-examined Jeff at trial about the expenses H.V.G.C. claimed Jeff owed, he claimed that he had never seen any of the exhibits showing the receipts and invoices H.V.G.C. claims it paid on Jeff's behalf.

> a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

TEX. BUS. & COM. CODE ANN. § 15.50(a) (Vernon 2002); *Alex Sheshunoff Mgmt. Svcs., L.P. v. Johnson*, 209 S.W.3d 644, 648 (Tex. 2006). Section 15.50(a) does not permit a noncompete covenant to stand alone; it must be "ancillary to or part of" an enforceable agreement. TEX. BUS. & COM. CODE ANN. § 15.50(a). It must also be supported by consideration. *Id*.

To be enforceable, a covenant must "contain[] limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." *Id*.; *Alex Sheshunoff Mgmt. Svcs*., 209 S.W.3d at 648. A restraint is unnecessary if it is broader than necessary to protect the legitimate interests of the employer. *DeSantis v. Wackenhut Corp*., 793 S.W.2d 670, 682 (Tex. 1990). Whether a covenant is a reasonable restraint on trade is a question of law for the court. *Light v. Cent. Cellular Co. of Tex*., 883 S.W.2d 642, 644 (Tex. 1994), *cert. denied,* 498 U.S. 1048 (1991); *Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 388 (Tex. 1991).

*Applicable Facts*

In their second amended petition, the Goodins pled for a declaratory

judgment that the Non-Competition Agreements are void and unenforceable

because they were not ancillary to a personal services contract, not supported

by consideration, executed under duress, and not reasonably limited as to time,

geographical area, and scope of activities.  At the close of the Goodins' case,

their attorney informed the trial court as follows:

> Just one other point.  Since they're starting their case, part
> of their case is enforcement of these agreements.  I don't think
> we've ever made it clear to this Court, it was clear where we had
> the issue on the injunction that there's a lot of issues that are
> strictly for the Court.  The enforceability of those agreements with
> respect to satisfying the requirements in the Texas Business Code
> for a Non-Compete, I just mentioned it so I don't want to surprise
> you on whether or not they're separate and apart from another
> agreement, whether we have the actual interest that we're trying
> to protect.  You just can't keep somebody from going out and
> earning a living, the short of it is.  It's got to be ancillary, typically,
> and if the Supreme Court had their way, exclusively in connection
> with the sale of a business; not what we've got going on here.
>
> On top of that, they're seeking claims with respect to what
> would be an injunction or damages for failure to follow a non-
> compete that is not reasonably limited to protect the interest
> involved.  There is no limitation as to geographic scope, so we
> can't even enforce it as it exists as of this date.  I just wanted to
> pop those issues up.  They're coming.

At that point, the trial court went off the record.

After the defense rested, the Goodins' attorney moved for a directed verdict as to H.V.G.C.'s claims for breach of the Non-Competition Agreements on the same grounds he had previously argued to the trial court. The trial court denied the motion, however. The jury charge included a question asking whether the Goodins signed the Non-Competition Agreements under duress, to which the jury answered, "No." It also included a question asking whether the Goodins breached the Non-Competition Agreements, to which the jury also answered, "No."

In the Goodins' postverdict motion to disregard jury findings, they also requested that the trial court enter a declaratory judgment that the Non-Competition Agreements are "null and void." They also requested "that the Court award [the Goodins'] attorney[']s fees in connection with same. The jury only considered the issue of duress. Therefore, the declaratory relief requested remains before the court." The trial court denied the requested relief.

*Analysis*

The Goodins contended at trial, and contend on appeal, that the Non-Competition Agreements are unenforceable because, among other reasons, they contain no geographic limitation. H.V.G.C. contends — without authority — that they contain an implicit, reasonable geographic restriction because they restrict the Goodins from working only for H.V.G.C.'s then-current competitors; thus,

18

the Goodins should be prohibited from engaging in a competing business and working for H.V.G.C. competitors only in areas in which H.V.G.C. actually does business.

The text of the Non-Competition Agreements reads as follows:[9]

> BY THIS AGREEMENT, [H.V.G.C. as EMPLOYER] and [either Jeff or Philip as SUBCONTRACTOR] for mutual consideration, agree as follows:
>
> For a period of 5 (five) years . . . SUBCONTRACTOR, shall not directly or indirectly start a competing business, work for EMPLOYER'S competitors, solicit EMPLOYER'S customers, recruit EMPLOYER'S current employees, or disclose trade secrets or confidential information regarding EMPLOYER.
>
> Monies and/or compensation will be awarded to EMPLOYER as compensation for violation [of] this agreement.

H.V.G.C.'s business is directional drilling services.[10] There was evidence that H.V.G.C. had done business in not only the North Texas area, but in Tyler and San Antonio, Texas, and as far away as North Carolina. Thus, there was no evidence that the geographical scope of H.V.G.C.'s business was limited to

---

[9] Jeff signed a Non-Competition Agreement dated April 30, 2001, and one dated December 31, 2004; both were for five-year periods. The first agreement has expired by its own terms. Philip signed a Non-Competition Agreement dated December 31, 2004. The 2004 agreements expire December 31, 2009.

[10] Although Jeff already knew about the business, Philip learned the drilling side from Jeff while working at H.V.G.C.

19

any one particular area. Moreover, contrary to H.V.G.C.'s contention, the agreement does not purport to restrict the Goodins from competing only with respect to H.V.G.C.'s then-current customers; the agreement purports to restrict the Goodins from starting, directly *or indirectly*, a "competing business," without any limitation as to geographic scope whatsoever. Accordingly, we conclude and hold that the Non-Competition Agreements are unenforceable and that the trial court should have entered a declaratory judgment to that effect.[11] *See Stone v. Griffin Comm'n & Sec. Svcs., Inc.*, 53 S.W.3d 687, 695 (Tex. App.—Tyler 2001, no pet.) ("Texas courts have generally held that a geographical limitation imposed on the employee which consists of the territory within which the employee worked during his employment is a reasonable geographical restriction."); *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 793–94 (Tex. App.—Houston [1st Dist.] 2001, no pet.) ("A covenant not to compete with a broad geographical scope is unenforceable, particularly when no evidence establishes the employee actually worked in all areas covered by the covenant."); *cf. Curtis v. Ziff Energy Group, Ltd.*, 12 S.W.3d 114, 119–20

---

[11] H.V.G.C. did not plead for reformation of the covenant not to compete. *Hardy v. Mann Frankfort Stein & Lipp Advisors, Inc.,* No. 01-05-0180-CV, 2007 WL 1299661, at *13 (Tex. App.—Houston [1st Dist.] 2007, pet. filed); *Zep Mfg. Co. v. Harthcock,* 824 S.W.2d 654, 661 (Tex. App.—Dallas, no writ).

(Tex. App.—Houston [14th Dist.] 1999, no pet.) (upholding noncompete agreement restricting oil and gas consulting company's vice president from working for competing oil and gas consulting companies in North America when employer introduced evidence limiting its competitors to only twenty companies). We sustain the Goodins' third issue.

In their fourth issue, the Goodins claim that because they were entitled to a declaration that the Non-Competition Agreements are invalid, the trial court erred by refusing to award them attorney's fees on that claim. At trial, their attorney testified that $2,500 of his fee was attributable to trial of the "duress" claim and that $2,500 would be an appropriate appellate fee for the "declaratory judgment, duress issues." The jury declined to award attorney's fees on the Goodins' claim that they signed the agreements under duress. But having determined that the trial court erred by refusing to enter a declaratory judgment that the Non-Competition Agreements are invalid, we remand this issue to the trial court to determine whether the Goodins are entitled to any attorney's fees on this claim.[12] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 1997); *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 643

---

[12] Whether to award attorney's fees, and in what amount, is a discretionary matter for the trial court, with few restrictions. *See Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998); *NP Anderson Cotton Exch., L.P. v. Potter*, 230 S.W.3d 457, 466 (Tex. App.—Fort Worth 2007, no pet.).

(Tex. 2005); *Ayers v. Mitchell*, 167 S.W.3d 924, 932 (Tex. App.—Texarkana 2005, no pet.).

**Trial Court's Post-trial Release of Temporary Injunction Security to Marsha**

The Goodins' fifth issue challenges the trial court's release of their temporary injunction security to Marsha. At the beginning of the suit, the Goodins obtained a temporary injunction against Marsha to prevent her from evicting them from the property during the pendency of the suit. Their attorney deposited $1500 cash in lieu of a cost bond with the district clerk in accordance with civil procedure rule 684. TEX. R. CIV. P. 684. After the trial court entered its final judgment, the Goodins moved to release the entire amount, plus interest, to them. After a hearing on October 6, 2006, the trial court ordered the money released to Marsha for the benefit of Jimmie and H.V.G.C.

The Goodins contend that the release of the bond to Marsha was improper because she never pleaded nor proved any damages resulting from the issuance of the temporary injunction and because Jimmie and H.V.G.C. were not parties to the temporary injunction as they did not have any ownership interest in the property. The trial court's order says it considered the pleadings, attorneys' arguments, and the jury's verdict in determining to release the security "pursuant to a Writ of Execution on the Final Judgment of

22

$15,000.00." The order also states that "credit in the amount of [$1,500] should be applied to the Final Judgment."

Rule 684 of the Texas Rules of Civil Procedure requires a bond before the issuance of a temporary injunction. TEX. R. CIV. P. 684; *IAC, Ltd. v. Bell Helicopter Textron, Inc*., 160 S.W.3d 191, 203 (Tex. App.—Fort Worth 2005, no pet.). The applicant must post the bond, and it is payable to the adverse party if the temporary injunction is dissolved at trial. *IAC, Ltd*., 160 S.W.3d at 203. The purpose of the bond is to provide protection to the enjoined party for any possible damages occurring as a result of the injunction. *Id.*; *Bayoud v. Bayoud*, 797 S.W.2d 304, 312 (Tex. App.—Dallas 1990, writ denied).

A cause of action on the injunction bond is predicated on a breach of the condition of the bond. *DeSantis*, 793 S.W.2d at 685; *Safeco Ins. Co. of Am. v. Gaubert*, 829 S.W.2d 274, 278 (Tex. App.—Dallas 1992, writ denied). To prevail on this cause of action, the claimant must prove that the temporary injunction was issued or perpetuated when it should not have been, and that it was later dissolved. *DeSantis*, 793 S.W.2d at 685-86; *Safeco Ins. Co.*, 829 S.W.2d at 278. Specifically, the claimant must prove that the issuance of the injunction caused him damages. *DeSantis*, 793 S.W.2d at 686; *Safeco Ins. Co.*, 829 S.W.2d at 278.

The record does not contain any pleading by Marsha requesting release of the security for damages sustained as a result of the temporary injunction. Moreover, the injunction was entered as part of a rule 11 agreement among the parties; Marsha agreed to the imposition of the temporary injunction pending trial if the Goodins would vacate the property within thirty days of any adverse judgment against them becoming final. Accordingly, we conclude and hold that the trial court erred by releasing the security amount to Marsha in the absence of any pleading or proof that she was damaged by the issuance of the temporary injunction.

However, we also conclude and hold that the error was harmless. *See* TEX. R. APP. P. 44.1. There is no evidence that the Goodins superseded the judgment in favor of H.V.G.C. in accordance with rule 24. TEX. R. APP. P. 24.1(a), (f). And the record of the October 6 hearing, along with the trial court's order, shows that the trial court ordered release of the bond in partial execution of the judgment in favor of H.V.G.C.[13] Accordingly, we overrule the Goodins' fifth issue.

---

[13] The Goodins contend that because the judgment is in favor of H.V.G.C., the trial court erred by ordering the release of the bond to Marsha. But because the trial court released the bond in partial execution of the judgment, this complaint is H.V.G.C.'s, not the Goodins'; H.V.G.C. has not complained on appeal about the release of the bond to Marsha.

**Conclusion**

Having sustained the Goodins' third issue, we reverse the part of the trial court's order refusing a declaratory judgment on the Goodins' claims regarding enforceability of the Non-Competition Agreements and render a declaratory judgment that the December 31, 2004 Non-Competition Agreements are unenforceable for lack of a reasonable restraint as to geographic area. Having sustained Jeff's second issue, we reverse the part of the trial court's judgment awarding $5,000 in attorney's fees to H.V.G.C. and render a take-nothing judgment in Jeff's favor as to that claim. Having overruled Jeff's first issue and the Goodins' fifth issue, we affirm the remainder of the trial court's judgment. We remand the case to the trial court for a determination of whether the Goodins are entitled to attorney's fees on their claim for declaratory relief.

TERRIE LIVINGSTON
JUSTICE

PANEL A:   CAYCE, C.J.; LIVINGSTON and MCCOY, JJ.

CAYCE, C.J. dissents and concurs without opinion.

DELIVERED: May 8, 2008

25