

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-17-00054-CV

MARIO ALBERTO TALAVERA, SR.　　　　　　　　　　　　　　APPELLANT
D/B/A PRO COLLISION AND AUTO
REPAIR

V.

QUALITY CHOICE AUTO SALES　　　　　　　　　　　　　　APPELLEE
LLC

----------

### FROM COUNTY COURT AT LAW NO. 2 OF WISE COUNTY
### TRIAL COURT NO. CV-6727

----------

## MEMORANDUM OPINION[1]

----------

Appellant Mario Alberto Talavera, Sr. d/b/a Pro Collision and Auto Repair

(Talavera, Sr.) appeals the trial court's judgment for appellee Quality Choice Auto

Sales LLC (Quality Choice).  In three issues, Talavera, Sr. contends that we

should reverse the judgment because Quality Choice's pleading does not support

---

[1]*See* Tex. R. App. P. 47.4.

it, because the trial court did not have jurisdiction over him, and because the evidence is legally and factually insufficient to support the judgment. We reject all of these contentions and affirm the trial court's judgment.

## Background

Ben Cantu owns Quality Choice. Talavera, Sr. owns Pro Collision and Auto Repair. According to Cantu's testimony, in June 2015, Quality Choice bought a 2014 Ford Mustang for $6,495, financing the entire amount. Quality Choice entered into an agreement with Talavera, Sr. for Talavera, Sr. to repair the car, for the repaired car to be resold at an auction, and for Quality Choice and Talavera, Sr. to split the profits.

Talavera, Sr. arranged for the car to be towed to his shop, and Quality Choice wired him $3,000 to complete the repairs. After some time passed, Talavera, Sr. told Cantu that he could not repair the car because he had to get another job. Cantu asked for the return of the car and the $3,000, and when Talavera, Sr. returned neither, Cantu hired counsel and sent Talavera, Sr. a demand letter. He still did not respond, so Cantu paid a company $400 to repossess the car. The car was in pieces; it had a frame and a disconnected suspension, engine, and transmission. Cantu reassembled the car and paid a company $685 to tow it to Lubbock so that it could be sold at an auction. The car sold at the auction for $3,500 less a $175 seller's fee. Quality Choice paid the balance—$3,325—to the company that had financed the original purchase.

In November 2015, Quality Choice filed a petition in a Wise County justice court against Mario Alberto Talavera, Jr. (Talavera, Jr.) d/b/a Pro Collision and Auto Repair.[2] The petition alleged that Quality Choice had bought a Ford Mustang, that Quality Choice and "Mario Talavera" had agreed for Pro Collision and Auto Repair to "make necessary repairs" to the car, that Quality Choice had wired Talavera $3,000 to complete the repairs, that Talavera had failed to complete them, that Quality Choice had repossessed the car from Talavera, and that Quality Choice had been damaged by Talavera's actions. A constable served a citation by certified mail in February 2016; the citation states that the constable served it on "Mario Alberto," and the return receipt associated with the citation, although addressed to Talavera, Jr., states that it was received by Talavera, Sr. and contains his signature.[3] Talavera, Sr. filed a handwritten, signed answer stating, "I Mario Talavera disagree with lawsuite [sic] . . . in Wise County court. Quality Choice Auto Sales vs. Mario Talavera."[4]

---

[2]This petition appears in the record as an attachment to a brief in which Talavera, Sr. argued that the trial court did not have jurisdiction over him.

[3]At a hearing in the trial court, Talavera, Sr.'s counsel conceded that the citation was served on Talavera, Sr.

[4]The answer does not show whether Talavera, Jr. or Talavera, Sr. drafted and filed it. But during a hearing in the trial court, Talavera, Sr.'s counsel conceded that Talavera, Sr. "wrote that answer."

3

The justice court's judgment—a civil case disposition sheet signed in March 2016 by the justice court judge—reflects that Talavera, Sr. appeared[5] with his wife and that the justice court awarded Quality Choice $8,117.16, comprising $6,054.16 in damages, $1,922 in attorney's fees, and $141 in court costs. The justice court ordered that for Talavera, Sr. to appeal, he would need to post a bond for twice the amount of the judgment.[6]

Talavera, Sr. appealed the justice court's judgment to the trial court. In Talavera, Sr.'s notice of appeal, he contended that he had not been properly sued or served with citation and that the justice court had never obtained jurisdiction over him. Talavera, Sr. filed a statement of his inability to afford payment of court costs or an appeal bond, and Quality Choice contested Talavera, Sr.'s claim of inability to pay. In May 2016, the justice court held a hearing on the contest.[7] The justice court found that Talavera, Sr. was able to afford the appeal bond; the court's order recites that he had appeared for the hearing but that he had "failed to bring or show proof of income, tax returns, and

---

[5]On appeal, Talavera, Sr. argues that there is "no record of which Talavera—Jr. or Sr.—made an appearance" in the justice court. But Talavera, Sr.'s trial-court counsel acknowledged that Talavera, Sr. had appeared at trial in the justice court. Counsel claimed that Talavera, Sr. had appeared to contest the suit on behalf of Talavera, Jr.

[6]See Tex. R. Civ. P. 506.1(b).

[7]See Tex. R. Civ. P. 506.1(d). During the dispute about Talavera, Sr.'s ability to pay costs, he conceded that the "mail containing the citation and petition [in the justice court] was picked up by . . . Mario Talavera, Sr." He also conceded that he had appeared for trial.

4

all assets." The trial court later overruled Quality Choice's contest and allowed Talavera, Sr. to proceed without posting an appeal bond.

In the trial court, Talavera, Sr. contested the court's jurisdiction over him and asked the trial court for dismissal of the suit. The parties extensively briefed the issue, and after holding a hearing, the trial court found that it had jurisdiction.

Talavera, Sr. appeared for trial through counsel but not personally. After the trial court conducted a bench trial and received the parties' evidence and arguments, it signed a judgment for Quality Choice. The trial court's judgment awarded Quality Choice $8,352.76, trial-court attorney's fees of $25,677.50, and additional attorney's fees conditioned on Talavera, Sr. appealing and on Quality Choice prevailing in such an appeal. The trial court made the following findings and conclusions (among others):

**FINDINGS OF FACT**

. . . .

4. . . . [Quality Choice] purchased a [Ford Mustang] . . . for a total cost of $6,495.00

. . . .

7. . . . [Talavera, Sr.] entered into an oral agreement with [Quality Choice] under which [Quality Choice] would wire [Talavera, Sr.] $3,000.00 (for vehicle parts), in exchange for [Talavera, Sr.] to arrange to have the Vehicle hauled to his property and to make necessary repairs to the Vehicle within two (2) weeks. After [Talavera, Sr.] repaired the Vehicle, it was to be sold at [an] auction[,] . . . and [the parties] were to equally split the proceeds from the sale.

. . . .

5

13. . . . [Talavera, Sr.] accepted and received the $3,000.00 from [Quality Choice].

. . . .

16. . . . [T]he Vehicle remained on [Talavera, Sr.'s] Property and minimal repairs were done to the Vehicle.

. . . .

18. . . . [Talavera, Sr.] told [Quality Choice] he could not work on the Vehicle because he had to get another job. [Quality Choice] asked for the $3,000.00 and Vehicle back, but [Talavera, Sr.] refused.

. . . .

22. . . . [Quality Choice] paid to have the vehicle picked up from [Talavera, Sr.'s] Property and transported to [Quality Choice's] shop located in San Angelo . . . .

23. . . . [T]he engine and transmission had been removed from the Vehicle and [it] was in worse condition than at the time of purchase.

. . . .

28. [Talavera, Sr.] failed and refused to repair the Vehicle under the terms of the Agreement and continues to fail and refuse to return the $3,000 to [Quality Choice].

. . . .

37. . . . [Quality Choice] is entitled to recover damages from [Talavera, Sr.] in the amount of $8,352.76, consisting of $3,000 wired to [Talavera, Sr.], plus a $20.00 wire fee, $400.00 tow to San Angelo, $25.97 for a tie down ratchet, $100.00 for a chain hoist, $685.00 tow to Lubbock [for the auction], $2,248.46 to [the financing company] and $1,873.33 for the remaining balance owed to [the financing company].

. . . .

6

## CONCLUSIONS OF LAW

. . . .

8. [Talavera, Sr.] breached the terms of the Agreement with [Quality Choice] by failing to repair the Vehicle under the terms of the Agreement.

. . . .

10. [Talavera, Sr.] is liable for breach of contract. . . .

. . . .

16. The Court has jurisdiction of the parties, including [Talavera, Sr.], and the subject matter of this suit and the parties are properly before the Court.

Talavera, Sr. brought this appeal.

## Pleading and Jurisdiction

In his first and second issues, Talavera, Sr. contends that we should reverse the trial court's judgment because Quality Choice's justice-court pleading does not support it and because the trial court did not obtain jurisdiction over him. He relies on the facts that Quality Choice's petition in the justice court named Talavera, Jr.; that no pleading ever named him as the defendant; and that upon appeal to the trial court, the justice court failed to provide the petition and judgment from its records to the trial court.

Talavera Sr. initially relies on rule of civil procedure 506.2 to argue that because the justice court did not send the trial court a certified copy of the petition and judgment, the trial court did not have jurisdiction over the appeal. *See* Tex. R. Civ. P. 506.2 ("When an appeal has been perfected from the justice

7

court, the judge must immediately send to the clerk of the county court a certified copy of all docket entries, a certified copy of the bill of costs, and the original papers in the case."); *see also* Tex. R. Civ. P. 506.1 (reciting the procedures for an appeal to a county court of a justice court's judgment). As noted above, the record contains a copy of Quality Choice's justice-court petition but only as an attachment to a document filed by Talavera, Sr. in the trial court; as Quality Choice concedes, it does not appear from the record that the justice court directly provided the petition to the trial court.

Talavera, Sr. cites two cases for the proposition that because the justice court did not directly provide the petition to the trial court, the trial court lacked jurisdiction. *See Perry v. Greer*, 221 S.W. 931 (Tex. 1920); *Victory v. Schneider*, 163 S.W.2d 724 (Tex. Civ. App.—Amarillo 1942, no writ). These cases are distinguishable. In *Perry*, the county court's record omitted "any transcript of the proceedings in [the justice] court," and the supreme court held that upon remand, the county court should dismiss the suit "unless its jurisdiction was properly made to appear." 221 S.W. at 932. Similarly, in *Victory*, the county court's record included only a docket sheet transcript from the justice court, not the justice court's judgment or pleadings, and the court of appeals therefore held that the county court lacked jurisdiction. 163 S.W.2d at 725.

Here, unlike in *Perry* and *Victory*, the county court's record includes the justice court's pleadings (Quality Choice's petition and Talavera, Sr.'s answer), the citation, the judgment, and the notice of appeal. Talavera, Sr. cites no cases

8

supporting his argument that a justice court's failure to comply with rule 506.2 robs the county court of jurisdiction, and to the contrary, the language of rule 506.2 indicates that by the time the justice court should comply with the rule's requirement, jurisdiction is already established. *See* Tex. R. Civ. P. 506.2 ("*When an appeal has been perfected from the justice court*, the judge must immediately send to the clerk of the county court a certified copy of all docket entries, a certified copy of the bill of costs, and the original papers in the case." (emphasis added)). We conclude that Talavera, Sr. perfected his appeal to the county court by filing his statement of inability to pay the appeal bond; we reject his argument that any noncompliance with rule 506.2 affected the county court's jurisdiction. *See* Tex. R. Civ. P. 506.1(h) ("An appeal is perfected when a bond, cash deposit, or Statement of Inability to Afford Payment of Court Costs is filed in accordance with this rule."); *Sherrod v. Rogers*, No. 11-17-00019-CV, 2017 WL 1750081, at *1 (Tex. App.—Eastland May 4, 2017, no pet.) (mem. op.) (explaining that to "perfect an appeal from a justice court to a county court, the appealing party must file an appeal bond or a statement of inability to pay"); *Advance Imports, Inc. v. Gibson Prods. Co.*, 533 S.W.2d 168, 170 (Tex. Civ. App.—Dallas 1976, no writ) (recognizing that a justice court's duty to send the transcript of its proceedings to the county court arises after the appeal from the justice court to the county court has been perfected).

Next, Talavera, Sr. argues that the judgment of the trial court is a "nullity because it does not conform to the pleadings." He contends that because

9

Quality Choice filed its petition against Talavera, Jr. in the justice court, any judgment against him was improper and was rendered without jurisdiction.

The parties dispute whether the justice-court petition's incorrect designation of Talavera, Jr. as the defendant resulted in a misnomer or a misidentification. A misnomer occurs when a plaintiff misnames the correct defendant but serves the correct defendant. *Diamond v. Eighth Ave. 92, L.C.*, 105 S.W.3d 691, 695 (Tex. App.—Fort Worth 2003, no pet.); *see Baker v. Charles*, 746 S.W.2d 854, 855 (Tex. App.—Corpus Christi 1988, no writ) ("When an intended defendant is sued under an incorrect name, jurisdiction is proper after service on the defendant under the misnomer, if it is clear that no one was misled."). When misnomer occurs, a resulting judgment is not void as long as the "intention to sue the correct defendant is evident from the pleadings and process, such that the defendant could not have been misled." *Union Square Fed. Credit Union v. Clay*, No. 02-07-00167-CV, 2009 WL 1099434, at *3 (Tex. App.—Fort Worth Apr. 23, 2009, no pet.) (mem. op.) (quoting *Brown v. Lanier Worldwide, Inc.*, 124 S.W.3d 883, 895 (Tex. App.—Houston [14th Dist.] 2004, no pet.)). Upholding a judgment in which a misnomer has occurred "has a long history in our jurisprudence." *Brown*, 124 S.W.3d at 895.

Misidentification, on the other hand, "occurs when two separate legal entities with similar names actually exist and the plaintiff sues the wrong one because he is mistaken about which entity is the correct defendant." *Torres v. Johnson*, 91 S.W.3d 905, 908 (Tex. App.—Fort Worth 2002, no pet.); *see also*

10

*Sembritzky v. Shanks*, No. 01-07-00251-CV, 2009 WL 48234, at *4 (Tex. App.—Houston [1st Dist.] Jan. 8, 2009, no pet.) (mem. op.) (explaining that for misidentification to occur, there must "actually exist[] a defendant with the erroneous name").  The consequences of misidentification are "generally harsh." *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 594 (Tex. 2017).

Here, Quality Choice misnamed the intended defendant—Pro Collision and Auto Repair[8]—by filing its justice-court petition against Talavera, Jr. d/b/a Pro Collision and Auto Repair.[9]  But Quality Choice correctly served Talavera, Sr., the real owner of Pro Collision and Auto Repair.[10]  The mistake in the petition could not have misled Talavera Sr. because, among other reasons, the petition alleged, in detail, how he had breached a contract with Quality Choice; days after receiving the citation, he filed an answer expressing his disagreement with the suit; he personally appeared to contest the case in the justice court; he invoked the trial court's jurisdiction to annul the justice court's judgment against him; the trial court's record establishes that he participated in discovery by answering

---

[8]An individual doing business under an assumed or common name may be sued under the assumed or common name.  Tex. R. Civ. P. 28.

[9]The justice-court pleading against Talavera, Jr. d/b/a Pro Collision and Auto Repair is not a misidentification because the record does not indicate that a business that is called Pro Collision and Auto Repair and that is owned by Talavera, Jr. "actually exist[s]."  *See Torres*, 91 S.W.3d at 908.

[10]In a hearing on Talavera, Sr.'s claim that he was unable to pay for an appeal bond to the trial court, he testified that he owned Pro Collision and Auto Repair.

11

interrogatories; and he made several appearances in the trial court. *Cf. Dezso v. Harwood*, 926 S.W.2d 371, 374 (Tex. App.—Austin 1996, writ denied) (holding that a misnomer was not misleading to a business owner under similar facts). We conclude that Quality Choice's justice-court petition included a misnomer and that the misnomer did not affect the validity of the justice court's judgment or the trial court's judgment. *See Brown*, 124 S.W.3d at 895.

Finally, to the extent that Talavera, Sr. argues that the service of citation upon him was improper, we reject that contention for two reasons. First, Talavera, Sr. filed an answer in the trial court, thereby waiving any defects in service. *See Summersett v. Jaiyeola*, 438 S.W.3d 84, 92 (Tex. App.—Corpus Christi 2013, pet. denied). Second, Talavera, Sr.'s appeal from the justice court to the trial court, which he perfected through his statement of his inability to afford the appeal bond, constituted an appearance that subjected him to the trial court's jurisdiction. *See* Tex. R. Civ. P. 506.1(h); *Montgomery v. Chase Home Fin., LLC*, No. 05-08-00888-CV, 2009 WL 2784587, at *1–2 (Tex. App.—Dallas Sept. 2, 2009, no pet.) (mem. op.) ("An appeal bond operates as an answer and appearance in a county court at law and gives that court jurisdiction 'completely and absolutely as though [the defendant] had appeared and answered in the justice court.'" (quoting *Hairston & Peters v. S. Pac. Ry. Co.*, 94 S.W. 1078, 1078 (Tex. Civ. App.—Dallas 1906, no writ)); *see also Smith v. I-30 Bus. Park, LTD*, No. 06-10-00074-CV, 2010 WL 5061003, at *2 (Tex. App.—Texarkana Dec. 1, 2010, no pet.) (mem. op.) (holding that an appellant had waived any defects in

12

service of process by appealing a justice court's judgment to a county court at law).

For all of these reasons, we reject the arguments included within Talavera, Sr.'s first and second issues, and we overrule those issues.

## Evidentiary Sufficiency

In his third issue, Talavera, Sr. argues that the evidence is legally and factually insufficient to support the trial court's judgment. He contends that because he did not "testify at the bench trial, there was less than a scintilla of evidence to show that there was a meeting of the minds on the essential terms of the oral contract alleged by [Quality Choice]." He also argues that there was "less than a scintilla of evidence to show that [Quality Choice] adequately fulfilled the presentment requirement to recover attorney's fees."

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014) (op. on reh'g); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence

13

contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

**The evidence of an oral contract and Talavera, Sr.'s breach**

Talavera, Sr. contends that the evidence is insufficient to prove a contract between the parties and a breach of the contract. The elements of a breach of contract claim are the existence of a valid contract, performance or tendered performance by the plaintiff, breach of the contract by the defendant, and

14

resulting damages to the plaintiff. *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 666 (Tex. App.—Fort Worth 2010, no pet.). A valid contract, whether written or oral, exists when the evidence shows an offer, an acceptance in strict compliance with the terms of the offer, a meeting of the minds, each party's consent to the terms, and execution and delivery of the contract with the intent that it be mutual and binding. *Id.* at 670; *see Hulcher Servs., Inc. v. Emmert Indus. Corp.*, No. 02-14-00110-CV, 2016 WL 368180, at *19 (Tex. App.—Fort Worth Jan. 28, 2016, pet. denied) (mem. op.). An oral contract's terms must be definite and certain; the existence of the terms may be proved by circumstantial or direct evidence. *Hulcher Servs.*, 2016 WL 368180, at *19.

Quality Choice, through Cantu's testimony, proved terms of an agreement between Quality Choice and Talavera, Sr.: Quality Choice would buy a Ford Mustang, Quality Choice would send money to Talavera, Sr. to repair the car, Talavera, Sr. would do so, Quality Choice would resell the car, and Quality Choice and Talavera, Sr. would share the profits. Quality Choice also proved that it tendered performance by buying the car and by sending the money but that Pro Collision and Auto Repair breached the contract by failing to make the repairs. Finally, Quality Choice proved damages resulting from the breach, which we have detailed above.

Talavera, Sr. appears to argue that the evidence was insufficient because he did not testify and because Quality Choice failed to introduce certain documents to support Cantu's testimony. We reject this contention because the

15

trial court, as the factfinder, had the authority to accept and rely on Cantu's testimony. *See Liberty Mut. Ins. Co. v. Burk*, 295 S.W.3d 771, 777 (Tex. App.—Fort Worth 2009, no pet.) (explaining that in a bench trial, the "trial court is the sole judge of the credibility of the witnesses, assigns the weight to be given their testimony, may accept or reject all or any part of their testimony, and resolves any conflicts or inconsistencies in the testimony").

We hold that the evidence is legally and factually sufficient to prove a contract and Talavera, Sr.'s breach of the contract. We overrule that part of his third issue.

**The evidence of presentment to obtain attorney's fees**

Talavera, Sr. also asserts that the evidence is legally and factually insufficient to prove presentment as a statutory prerequisite for Quality Choice to obtain attorney's fees. A plaintiff may recover attorney's fees if it proves the breach of an oral or written contract. Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 2015). To recover the fees, the plaintiff must show that it "present[ed] the claim to the opposing party or to a duly authorized agent of the opposing party" and that the opposing party did not tender the amount owed. *Id.* § 38.002(2)–(3) (West 2015); *see Goodin v. Jolliff*, 257 S.W.3d 341, 349 (Tex. App.—Fort Worth 2008, no pet.).

Cantu testified that Quality Choice sent Pro Collision and Auto Repair a demand letter. The trial court admitted a copy of the letter. The letter, on letterhead from Quality Choice's counsel, is addressed to "Mario Talavera" and

16

"Pro Collision and Auto Repair." In the letter, Quality Choice described the agreement between the parties and asked for the return of the car and the $3,000.

Talavera, Sr. does not argue that the contents of the letter—demanding the return of the car and $3,000—are in any way insufficient to prove presentment under section 38.002. Rather, he contends only that Quality Choice failed to present evidence showing that he received the letter. But even if the letter is insufficient evidence of presentment, Cantu testified that he spoke to Talavera, Sr.; that Talavera, Sr. told him that he could not repair the vehicle; that he asked Talavera, Sr. for the car and the money back; and that Talavera, Sr. refused to return the car or the money. We conclude that Cantu's oral request, which mirrored the request that Quality Choice made later in its demand letter, constituted legally and factually sufficient evidence to satisfy section 38.002's presentment requirement. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.002(2)–(3); *Gordon v. Leasman*, 365 S.W.3d 109, 116 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (stating that presentment may be oral and that all that is "necessary is that a party show that its assertion of a debt or claim and a request for compliance was made to the opposing party, and the opposing party refused to pay the claim"); *W. Beach Marina, Ltd. v. Erdeljac*, 94 S.W.3d 248, 269 (Tex. App.—Austin 2002, no pet.) ("Presentment does not require a party to follow a particular form—it may be informal or even oral."). We overrule the remainder of Talavera, Sr.'s third issue.

17

## Conclusion

Having overruled all of Talavera, Sr.'s issues, we affirm the trial court's judgment.

/s/ Wade Birdwell
WADE BIRDWELL
JUSTICE

PANEL:  WALKER, MEIER, and BIRDWELL, JJ.

DELIVERED:  February 15, 2018