

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00170-CV

LAINIE WHITMIRE AND RAY
WHITMIRE

APPELLANTS
AND APPELLEES

V.

NATIONAL CUTTING HORSE
ASSOCIATION

APPELLEE
AND APPELLANT

----------

FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

In four issues, Appellants Lainie Whitmire and Ray Whitmire argue that the trial court erred by granting judgment notwithstanding the verdict (JNOV) on Lainie's breach of oral agreement and false imprisonment claims, by awarding Appellee National Cutting Horse Association (the NCHA) attorney's fees on

---

[1]See Tex. R. App. P. 47.4.

Lainie's and Ray's declaratory judgment actions, and by not awarding Lainie attorney's fees on her breach of contract claim. The NCHA also brings a conditional cross-appeal, arguing that the trial court abused its discretion by admitting and excluding certain evidence regarding Lainie's breach of oral agreement claim. We reverse and render in part and affirm as modified in part.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Underlying Facts

Lainie was a member of the NCHA and competed in the amateur and non-professional classes. In 2004, the NCHA informed her that it had concerns regarding her qualifications to compete in those classes and requested detailed information regarding her past employment. Later that year, the NCHA informed Lainie that a hearing would be held in front of the NCHA's grievance committee on November 15, 2004, regarding her qualifications.

Lainie and her attorney, Clark Brewster, appeared at the hearing; the NCHA's attorney, E. Eldridge Goins, Jr., appeared on behalf of the NCHA. At the conclusion of the hearing, the committee decided to revoke Lainie's amateur status and also to suspend her non-professional status unless she produced evidence to show her eligibility for non-professional status.

Lainie appealed the grievance committee's ruling; on the day of the appeals hearing, Brewster, on behalf of Lainie, and Goins, on behalf of the NCHA, reached an oral settlement agreement. Both parties agree that they reached a settlement agreement and that, as part of the agreement, Lainie would withdraw all appeals and her membership would be suspended for six months. The parties dispute whether reinstatement of Lainie's non-professional status at

2

the conclusion of the six-month suspension was a term of the settlement agreement.

On January 19, 2005, Goins sent Brewster a letter, purportedly confirming the terms of the settlement agreement. The letter stated that the parties agreed that "[a]ll pending investigations and appeals [were thereby] ceased," that Lainie's NCHA membership would be suspended for six months, and that Lainie's amateur and non-professional statuses would be revoked. The letter did not mention reinstatement of Lainie's non-professional status. The letter did not provide a signature line for Brewster or Lainie, and they did not otherwise respond in writing.

Lainie and Brewster testified at trial that, during a telephone call from Brewster to Goins after Brewster received the letter, Goins assured Brewster that, although not stated in the letter, Lainie's non-professional status would be reinstated at the conclusion of her six-month membership suspension.

After the six-month membership suspension period ended, Lainie's membership was reinstated, and she resumed participation at NCHA events in the open class. Lainie applied for reinstatement of her non-professional status in October 2005; in her application, she stated that her amateur status had been suspended and revoked and that her non-professional status had been suspended in November 2004. The NCHA denied her application due to ineligibility. In a letter dated March 2, 2006, Lainie's new attorney, James Walker, requested reconsideration of Lainie's application for non-professional status and an appeal to the NCHA executive committee in the event that her application was denied a second time. The letter did not mention any oral agreement for automatic reinstatement of her non-professional status.

3

The application was denied, and on August 21, 2006, the NCHA held a hearing to consider Lainie's appeal. Lainie appeared with her attorney, Walker. After the hearing, the executive committee denied Lainie's application for non-professional status and suspended her NCHA membership for one year.

## B. The Underlying Procedural Posture

In October 2006, Lainie filed suit against the NCHA asserting claims for, among other things, declaratory judgment, breach of the oral settlement agreement, false imprisonment, and intentional infliction of emotional distress;[2] she also sought attorney's fees under chapter 37 of the Texas Civil Practice and Remedies Code[3] for her declaratory judgment claim and under chapter 38[4] for her breach of contract claim. Ray joined the suit as a plaintiff after the NCHA terminated his membership; he brought claims against the NCHA for declaratory judgment, violations of his right to due process, and breach of fiduciary duty. The NCHA filed a counterclaim for declaratory judgment; it also requested attorney's fees under chapter 38 of the Texas Civil Practice and Remedies Code and pursuant to the NCHA's rules.

---

[2]At an NCHA event at the end of 2004, Lainie was called into the women's locker room, where she found several executive committee members and Goins waiting to discuss her qualifications; the events that transpired in the locker room, which we need not address here, formed the basis of her false imprisonment and intentional infliction of emotional distress claims

[3]See Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008) (providing that, in any proceeding under the Declaratory Judgments Act, the trial court may award reasonable and necessary attorney's fees as are equitable and just).

[4]See id. § 38.001(8) (West 2008) (providing for recovery of attorney's fees for claims for oral or written contracts).

4

The trial court granted summary judgment in favor of the NCHA on all of Lainie's claims except false imprisonment and intentional infliction of emotional distress. The trial court severed Lainie's two remaining claims, all of Ray's claims, and the NCHA's counterclaim.

Lainie appealed the summary judgment in favor of the NCHA to this court. *See Whitmire v. Nat'l Cutting Horse Ass'n*, No. 02-08-00176-CV, 2009 WL 2196126 (Tex. App.—Fort Worth 2009, pet. denied) (mem. op.). We upheld the trial court's summary judgment in favor of the NCHA on all of Lainie's claims— including her declaratory judgment action—except her claim for breach of the oral settlement agreement, and we remanded that claim to the trial court. *See id.* at *11. On remand, the trial court consolidated Lainie's breach of oral contract claim with the previously-severed and abated claims. The trial court then granted summary judgment for the NCHA on Ray's claims.[5] The trial court also granted summary judgment for the Whitmires on the NCHA's counterclaim for declaratory judgment and attorney's fees.

The NCHA and Lainie then entered into a written agreement that "all attorneys' fees issues [would] be submitted post-verdict" to the trial court.

Lainie's claims for breach of oral contract and false imprisonment proceeded to trial.[6] After a two-week trial, the jury returned a verdict in favor of Lainie on both of her claims. The jury specifically found that the NCHA and

---

[5]Ray did not appeal the summary judgment; he appeals only the trial court's award of attorney's fees to the NCHA for defending his declaratory judgment action.

[6]Prior to trial, Lainie nonsuited her claim for intentional infliction of emotional distress.

Lainie had an agreement to reinstate her non-professional status at the end of her six-month membership suspension and that the NCHA failed to comply with that agreement; the jury awarded Lainie $70,000 in damages. The jury also found that the NCHA had falsely imprisoned Lainie and awarded zero dollars in damages for that claim.

Lainie requested that the trial court enter judgment in accordance with the jury's verdict and also requested attorney's fees for prevailing on her breach of contract claim; she submitted Walker's affidavit as evidence of her attorney's fees. The NCHA filed a motion for JNOV and alternative motion for new trial on Lainie's breach of contract claim. It requested that the trial court disregard the jury's findings on jury questions 1–4 (the breach of oral agreement and false imprisonment questions) and enter a take-nothing judgment on all of the Whitmires' claims; the NCHA also requested attorney's fees, attaching as evidence its attorneys' affidavits. The NCHA alternatively moved for a new trial based on the evidentiary issues that form the basis of its cross-appeal.

The trial court granted the NCHA's motion for JNOV, signing a final judgment that Lainie take nothing on her breach of oral agreement and false imprisonment claims and awarding her no attorney's fees. The final judgment also ordered that the NCHA recover $302,000 in attorney's fees from Lainie for defending her declaratory judgment claim and recover $45,000 in attorney's fees from Ray for defending his declaratory judgment claim. The Whitmires timely filed notice of appeal, and the NCHA timely filed notice of cross-appeal.

### III.  JNOV ON BREACH OF ORAL AGREEMENT

In part of her first issue, Lainie argues that the trial court erred by disregarding the jury's verdict on her breach of oral agreement claim and by

6

granting JNOV for the NCHA because she presented substantial evidence to support the jury's findings that she and the NCHA had an agreement to reinstate her non-professional status at the end of her six-month membership suspension and that she suffered $70,000 in damages as a result of the NCHA's breach.

## A. Standard of Review

A trial court may disregard a jury verdict and render JNOV if no evidence supports the jury findings on issues necessary to liability or if a directed verdict would have been proper. *See* Tex. R. Civ. P. 301; *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003); *Fort Bend Cnty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991). A directed verdict is proper only under limited circumstances: (1) when the evidence conclusively establishes the right of the movant to judgment or negates the right of the opponent; or (2) when the evidence is insufficient to raise a material fact issue. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Playoff Corp. v. Blackwell*, 300 S.W.3d 451, 454 (Tex. App.—Fort Worth 2009, pet. denied) (op. on reh'g).

To determine whether the trial court erred by rendering a JNOV, we view the evidence in the light most favorable to the verdict under the well-settled standards that govern legal sufficiency review. *See Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009); *Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003). We must credit evidence favoring the jury verdict if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *See Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009); *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007).

## B. Sufficient Evidence to Support Jury's Breach of Contract Finding

7

Jury Question No. 1 asked, "Was there an agreement between the [NCHA] and Lainie Whitmire to reinstate her non-professional status at the end of her six (6) month suspension?" The question also set forth the applicable law as follows:

> You are instructed that in deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.
>
> You are instructed that a party's conduct includes the conduct of another who acts with the party's authority or apparent authority.
>
> You are instructed that authority for another to act for a party must arise from the party's agreement that the other act on behalf and for the benefit of the party. If a party so authorizes another to perform an act, that such other party is also authorized to do whatever else is proper, usual, and necessary to perform the act expressly authorized.
>
> You are instructed that apparent authority exists if a party (1) knowingly permits another to hold himself out as having authority or (2) through lack of ordinary care, bestows on another such indications of authority that lead a reasonably prudent person to rely on the apparent existence of authority to his detriment. Only the acts of the party sought to be charged with responsibility for the conduct of another may be considered in determining whether apparent authority exists.
>
> You are instructed that a party's conduct includes conduct of others that the party has ratified. Ratification may be express or implied.
>
> You are instructed that implied ratification occurs if a party, though he may have been unaware of unauthorized conduct taken on his behalf at the time it occurred, retains the benefits of the transaction involving the unauthorized conduct after he acquired full knowledge of the unauthorized conduct. Implied ratification results in the ratification of the entire transaction.

The jury answered "yes" to this question.

8

In its motion for JNOV, the NCHA argued that evidence at trial established that the only settlement terms approved by the NCHA were those contained in the January 19, 2005 letter that Goins sent to Brewster; that the NCHA executive committee did nothing to cause Lainie to reasonably believe that Goins had any authority to enter into an agreement other than upon those terms approved by the executive committee in Goins's letter; that the executive committee did not accept or ratify any other settlement terms; and that Lainie and her attorneys never mentioned the agreement to reinstate her non-professional status until she filed suit over a year after her membership suspension ended. The NCHA does not dispute that Goins had actual authority to enter into settlement agreements on its behalf upon terms approved by the NCHA executive committee, and the NCHA does not dispute that Goins did in fact, on its behalf, enter into a settlement agreement with Lainie.

Thus, we will first determine whether, viewing the evidence in the light most favorable to the jury's verdict under the well-settled standards that govern legal sufficiency review, crediting evidence favoring the jury verdict if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not, any evidence exists that Goins had the authority, actual or apparent, to bind the NCHA to the terms of settlement as testified to by Lainie and Brewster— which included reinstatement of Lainie's non-professional status after her six-month membership suspension ended.[7]  *See* Tex. R. Civ. P. 301; *Tiller*, 121

---

[7]To the extent that the NCHA's arguments could be interpreted to include an argument that the evidence is insufficient to show that Goins, on behalf of the NCHA, agreed to reinstate Lainie's non-professional status as part of the oral settlement agreement, the testimony of Brewster and Lainie constitutes more than a scintilla of evidence of that agreement sufficient to support the jury's

9

S.W.3d at 713; *Fort Bend Cnty. Drainage Dist.*, 818 S.W.2d at 394; *see also Prudential Ins. Co. of Am.*, 29 S.W.3d at 77; *Playoff Corp.*, 300 S.W.3d at 454.

Generally, a principal will be liable for the acts of its agent only if the acts are within the agent's authority or if the principal ratifies the acts. *See Elliot Valve Repair Co. v. B.J. Valve & Fitting Co.*, 675 S.W.2d 555, 560–61 (Tex. App.—Houston [1st Dist.]), *rev'd on other grounds*, 679 S.W.2d 1 (Tex. 1984). If an agent acts within the scope of his authority, both the agent and the principal may be liable. *Wynne v. Adcock Pipe & Supply*, 761 S.W.2d 67, 69 (Tex. App.—San Antonio 1988, writ denied). An agent may have actual or apparent authority to act on behalf of a principal; the agent's authority depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority). *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007).

Actual authority usually denotes the authority a principal (1) intentionally confers upon an agent, (2) intentionally allows the agent to believe he possesses, or (3) by want of due care allows the agent to believe he possesses. *2616 S. Loop L.L.C. v. Health Source Home Care, Inc.*, 201 S.W.3d 349, 356–57 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *Currey v. Lone Star Steel Co.*, 676 S.W.2d 205, 209–10 (Tex. App.—Fort Worth 1984, no writ). Actual authority may be express or implied. *2616 S. Loop L.L.C.*, 201 S.W.3d at 356–57. An attorney retained for litigation is presumed to possess actual authority to enter

---

implied finding to the contrary. *See, e.g.*, *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002) ("More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence.").

into a settlement on behalf of a client. *City of Roanoke v. Town of Westlake*, 111 S.W.3d 617, 628 (Tex. App.—Fort Worth 2003, pet. denied). This presumption of actual authority may be rebutted by affirmative proof that the client did not authorize his attorney to enter into the settlement. *Walden v. Sanger*, 250 S.W.2d 312, 316 (Tex. Civ. App.—Austin 1952, no writ); *see Johnson v. Rancho Guadalupe, Inc.*, 789 S.W.2d 596, 598 (Tex. App.—Texarkana 1990, writ denied); *Fail v. Lee*, 535 S.W.2d 203, 207–08 (Tex. Civ. App.—Fort Worth 1976, no writ).

Apparent authority is based on estoppel. *Gaines*, 235 S.W.3d at 182. In *Gaines*, the Texas Supreme Court explained that apparent authority

> aris[es] 'either from a principal knowingly permitting an agent to hold [himself] out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority [he] purports to exercise.'

*Id.* (quoting *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 948 (Tex. 1998)). Only the conduct of the principal is relevant. *Id.* (quoting *NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 953 (Tex. 1996)). We examine the conduct of the principal and the reasonableness of the third party's assumptions about authority. *Id.* at 182–83.

In this case, Brewster and Lainie both testified that the NCHA held out Goins as its attorney with authority to settle the dispute between them and that neither Brewster nor Lainie knew of any limitations to Goins's authority to settle. The executive director of the NCHA, Charles Jeffrey Hooper, testified that Goins represented the NCHA throughout its dispute with the Whitmires and that Goins appeared at hearings as the NCHA's attorney. Although the NCHA also

presented evidence that it had only authorized Goins to settle the dispute with Lainie upon the express terms it had agreed to, that evidence does not defeat the evidence that the NCHA held Goins out as having unqualified, unlimited authority to negotiate a settlement with Lainie on its behalf. *See Thomas Reg'l Directory Co., Inc. v. Dragon Products, Ltd.*, 196 S.W.3d 424, 428 (Tex. App.—Beaumont 2006, pet. denied) ("To require a relying party to prove it ascertained the fact and scope of authority would require proof of actual authority, not apparent authority. Apparent authority is based on estoppel, and is intended 'to prevent injustice and protect those who have been misled.'") (quoting *Baptist Mem'l Hosp. Sys.*, 969 S.W.2d at 948 n.2, 949); *cf. Douglass v. Panama, Inc.*, 504 S.W.2d 776, 779 (Tex. 1974) (stating that "apparent authority is not available where the other contracting party has notice of the limitations of the agent's power"). No evidence exists that Lainie and Brewster had notice of any limitations on Goins's authority or power to settle the dispute between Lainie and the NCHA.

We hold that more than a scintilla of evidence supports the jury's finding that the NCHA and Lainie had an agreement—entered into by Goins acting with apparent authority of the NCHA—to reinstate her non-professional status at the end of her six-month membership suspension. *See* Tex. R. Civ. P. 301; *Tiller*, 121 S.W.3d at 713; *Fort Bend Cnty. Drainage Dist.*, 818 S.W.2d at 394.

## C. Sufficient Evidence to Support Damages Finding

Lainie also argues in her first issue that she presented sufficient evidence to support the jury's finding that the NCHA's breach of the oral settlement agreement caused her to suffer $70,000 in damages. As evidence of her damages, Lainie presented evidence that the value of three of her horses—Can Yall CD Freckles, Dual Hickory Nita, and Hickory Kit Rio—diminished in value

12

because she could not compete and earn prize money on them at NCHA shows. Lainie's expert witness, David Johnson, testified that the total value of all three horses diminished by $130,000 because Lainie could not compete with them at NCHA events.

### 1. Evidence of Ownership

The NCHA argued in its motion for JNOV and contends on appeal that Lainie presented no evidence of any property or monetary interest in those three horses. Ray testified that the horses belonged to both Lainie and him and were registered in the name of "Whitmire Ranch," of which Lainie was a part owner. Lainie also introduced into evidence the certificates of registration for both Dual Hickory Nita and Hickory Kit Rio, showing that Whitmire Ranch had purchased the horses in May and July 2004, respectively. The certificates of registration show that they were transferred into Ray's name on January 20, 2005, just after Lainie accepted a six-month membership suspension as part of her settlement with the NCHA.[8] A letter to Lainie from the NCHA, signed by Hooper as executive director, noted the NCHA's understanding that Whitmire Ranch "is owned in part by Lainie Whitmire."[9] The evidence, viewed in the light most

---

[8]Evidence at trial showed that the NCHA prohibits horses that are registered in whole or in part in a non-member's name from competing at NCHA events and that, consequently, the horses were transferred into Ray's name so that they could continue to compete at NCHA events.

[9]The letter, dated October 25, 2006, explained that two horses not at issue in this lawsuit could not compete at an upcoming NCHA event because they were registered in either Lainie's name or in the Whitmire Ranch's name. The letter stated, "Both the records of this Association and the AQHA show each of these horses to be owned in part by Lainie Whitmire or by Whitmire Ranch which we understand is owned in part by Lainie Whitmire."

13

favorable to the verdict, is sufficient to raise a material fact issue of Lainie's ownership of the three horses. *See Ingram*, 288 S.W.3d at 893; *Wal-Mart Stores, Inc.*, 102 S.W.3d at 709; *Prudential Ins. Co. of Am.*, 29 S.W.3d at 77; *Playoff Corp.*, 300 S.W.3d at 454.

## 2. *Admissible Expert Testimony*

Before addressing whether Lainie presented some evidence to support the jury's $70,000 damages finding, we will first address the NCHA's contention, as part of its conditional cross-appeal, that Johnson's expert opinion testimony as to the diminished value of the three horses was inadmissible as unreliable expert testimony. The NCHA argues that Johnson's opinions were based solely on values given to him by Ray and that Johnson did not conduct an independent evaluation to verify the accuracy of those numbers.[10]

Admissibility of expert testimony is a matter within the trial court's discretion. *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000); *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). A trial court does not abuse its discretion merely because a reviewing court in the same circumstances would have ruled differently. *Robinson*, 923 S.W.2d at 558; *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986). The trial court abuses its discretion if its decision is arbitrary or unreasonable without reference to guiding rules and principles. *Downer*, 701 S.W.2d at 241–42.

---

[10]The NCHA did not challenge Johnson's qualifications to determine the diminished value of horses; it challenged only his ability to testify in this particular case based on his reliance on Ray's valuations.

14

To be admissible, an expert witness's testimony must be relevant and reliable. *Robinson*, 923 S.W.2d at 556. The expert must be qualified, and the testimony must be relevant and be based on a reliable foundation. *Id.*; *see* Tex. R. Evid. 702. Expert testimony may be unreliable if there is too great an analytical gap between the data upon which the expert relies and the opinion he offers. *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 800 (Tex. 2006); *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 727 (Tex. 1998). An expert's bare opinion will not suffice, and an expert must explain how his research supports his conclusion. *See Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 905–06 (Tex. 2004); *Kerr–McGee Corp. v. Helton*, 133 S.W.3d 245, 257 (Tex. 2004), *abrogated on other grounds by Coastal Oil & Gas Corp. v. Garza Energy Trust*, 268 S.W.3d 1 (Tex. 2008). In applying the reliability standard, the trial court does not decide whether the expert's conclusions are correct; rather, the trial court determines whether the analysis used to reach those conclusions is reliable. *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 629 (Tex. 2002).

Here, in a hearing outside the jury's presence, Johnson testified that he owns a company that does litigation consulting and horse appraisals and that he has handled over 500 cases and has appraised over 1,000 horses. He said that he was asked to opine on how the Whitmires were hurt by the NCHA's actions and to determine the diminished value of the horses based on the NCHA's actions.[11] He testified that in determining the diminished value of the three

---

[11]He explained that appraising a horse's value is very similar to determining the diminished value of a horse and that a lot of the analysis is exactly the same.

15

horses at issue, he reviewed twenty-eight videos of Lainie riding the horses and took thirty to forty pages of notes from those videos. Johnson said that from the videos, he determined that Lainie rode the horses well, and he judged the horses' "confirmations" (or physical make-up as cutting horses) and performances, all of which he explained factored into his valuation of the horses.[12] Johnson explained that a horse's bloodline is also an important consideration in valuing cutting horses; he reviewed the semi-edited show performance pedigrees for the Whitmires' three horses, which detailed their performance records and their lineages two or three generations back. Johnson also reviewed recent NCHA Futurity sales prices for other horses, which he explained gave him an idea of the Whitmires' horses' values based on what other horses in their lineages had sold for.

Johnson also interviewed Ray and Lainie as part of his valuation determination and learned that they had pre-purchase veterinary exams performed on the three horses before they bought them and that the horses had no significant veterinary histories.[13] Ray told Johnson what they paid for each horse in 2004 and what he thought he could get for each horse in 2007, at the time of the interview. Johnson also considered the fact that Tommy Marvin is a professional trainer with a substantial background in the cutting horse business and helped the Whitmires purchase the three horses. Johnson testified at the

---

[12]Johnson did not look at the horses in person; he explained that he seldom does that when appraising a horse and that the videos are "extremely accurate and show everything about that horse that you would want to see."

[13]Johnson explained that a pre-purchase veterinary exam determines if the horse is physically sound, breathes well, has a strong heartbeat, has good eyes, and has good flexion in all joints.

16

hearing that the prices paid by the Whitmires for the three horses were appropriate and "legitimate." Johnson testified that he arrived at the diminution in value for each horse by relying on what Ray told him he bought the horses for and what Ray told him he thought he could sell the horses for in 2007, in addition to Johnson's background as a horse appraiser in the business for forty-five years and the documents and videos that he reviewed.

The NCHA focuses on Johnson's reliance on Ray's valuations, but contrary to the NCHA's contention, Johnson did more than "simply t[ake] [Ray's] word" for all of his findings. As he explained at the hearing, he conducted his own investigation and analysis into the value of the three horses both before and after Lainie lost her NCHA membership and determined that the prices paid by the Whitmires and the prices that Ray said he could get for the horses in 2007 were reasonable. *Cf. Helton*, 133 S.W.3d at 257 (holding expert's failure to explain how various factors affected his calculations rendered opinion unreliable). Johnson's testimony establishes that, in addition to Ray's valuations, Johnson also considered Lainie's riding abilities on each of the three horses; the horses' physical compositions, performances, and pedigrees; and auction results and sales prices for other horses. Johnson explained how these considerations factored into the horses' values. We conclude that the trial court could have reasonably concluded that Johnson's expert opinions were more than just conclusory, bare assertions based solely on Ray's valuations. *See, e.g.*, *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 40 (Tex. 2007) (holding that expert's testimony amounted to more than a recitation of his credentials and subjective opinion and concluding that appellant's complaints about expert testimony went more to its weight, not its admissibility); *Page v. State Farm Lloyds*, 259 S.W.3d

17

257, 268 (Tex. App.—Waco 2008) (concluding that no significant "analytical gap" existed between expert's opinions of property damage and bases for those opinions when expert based them on his knowledge, training, experience, inspection of the property, data he and others gathered, and information produced by software program relied on in industry), *aff'd in part, rev'd in part on other grounds*, 315 S.W.3d 525 (Tex. 2010); *cf. Hall v. Rutherford*, 911 S.W.2d 422, 426 (Tex. App.—San Antonio 1995, writ denied) (holding attorney's expert testimony as to the proper standard of care and alleged legal malpractice was no evidence of legal malpractice when based solely on factual assertions of an interested party—the appellant—without further exploration of the evidentiary background of the case). We hold that the trial court did not abuse its discretion by admitting Johnson's testimony, and we overrule this portion of the NCHA's cross-appeal. *See Downer*, 701 S.W.2d at 241–42.

### 3. Sufficient Evidence of Damages

Having held that the trial court did not abuse its discretion by admitting Johnson's expert testimony, we must determine whether Lainie provided some evidence to support the jury's $70,000 damages finding.

Johnson testified in front of the jury similarly to his testimony at the *Daubert/Robinson* hearing. He explained to the jury that, from watching the twenty-eight videos of Lainie being coached and riding the horses, he determined that she rides very well and is an excellent student and that the three horses are sound, built well for use as cutting horses, and well conformed. Johnson testified that a "big factor" in a cutting horse's value is a good rider because "the horse can be worth a million bucks. But if the rider doesn't ride well, it can soon make

18

that horse worth about zero. And so the better that rider does, the more applicable the appraisal value is going to be."

Johnson also testified about the semi-edited performance pedigrees for Can Yall CD Freckles, Hickory Kit Rio, and Dual Hickory Nita, and the pedigrees were introduced into evidence. He explained that the pedigrees show the horses' lineages two or three generations back and also their performance records. He testified specifically about several of the well-known horses in the horses' pedigrees: Can Yall CD Freckles was sired by a "very famous stallion" and also has in its lineage four other well-known horses, including "probably one of the most impressive cutting sires . . . that there's been"; Hickory Kit Rio's lineage includes some of the same top cutting horses as in Can Yall CD Freckles's lineage; and Dual Hickory Nita's "breeding is just first rate."

Johnson also explained that the sales prices of other horses in the bloodline are important considerations in determining a horse's value and said that he had reviewed performance horse sales guides and auction results, which he testified give a broad idea of the sales prices that certain sire and dam pairings would bring. Johnson interviewed Ray, Lainie, and their horse trainer Tommy Marvin about the horses. Ray told Johnson that all three horses had a pre-purchase veterinary exam done before the Whitmires purchased them; the exams showed no problems with the horses.

Johnson testified that the Whitmires paid $55,000 for Can Yall CD Freckles, $35,000 for Hickory Kit Rio, and $120,000 for Dual Hickory Nita. He said that, in his opinion, the prices the Whitmires paid for the three horses were "very reasonable." He further testified to his opinion of the value of the three horses at the time that he conducted his valuations in 2007: Can Yall CD

Freckles was worth $40,000, for a loss of $15,000; Hickory Kit Rio was worth $15,000, for a loss of $20,000; and Dual Hickory Nita was worth $25,000, for a loss of $95,000. In 2010, Johnson updated his valuations and determined that the three horses' values had not gone up since his 2007 determinations.

Johnson testified that the biggest factor in the horses' diminished values was that Lainie was prohibited from competing with them at NCHA events and, consequently, did not have the ability to generate NCHA prize money on them. Johnson explained that Lainie could compete with the horses only at non-NCHA cutting events, "which are nowhere near the size or beneficence . . . of the NCHA. That means they don't pay as well." He testified that the prize money at American Quarter Horse Association (AQHA) competitions is much lower than at NCHA events—$250,000 for an NCHA winner compared to $13,000 for an AQHA winner. He said that the Whitmires showed at as many non-NCHA events as they could. Johnson opined that Lainie would have been able to maintain the values of the three horses had she been allowed to ride them at NCHA events and that the total loss in value of the three horses attributable to Lainie not being able to show at NCHA events was $130,000.

On cross-examination, Johnson testified that he based his valuation of the three horses on what price Ray said he could get for the horses; Johnson said Ray knew the market for horses in his area better than he did.

Jay Proost, the executive director of the American Society of Equine Appraisers, testified for the NCHA about his appraisal of the three horses. Proost testified that in appraising a horse's value, he looks at its pedigree, its performance history, and its production record, if any. He estimated a diminution in value of $25,000 for Dual Hickory Nita, $15,000 for Can Yall CD Freckles, and

20

$0 for Hickory Kit Rio.[14]  He said that the diminution in value of the three horses was a result of Lainie's poor riding of the horses, not her inability to compete at NCHA events.

Viewing the evidence in the light most favorable to the verdict and crediting evidence favoring the jury's damages finding, we hold that more than a scintilla of evidence supports the jury's finding that Lainie was damaged in the amount of $70,000 by the NCHA's breach.  *See Ingram*, 288 S.W.3d at 893; *Wal-Mart Stores, Inc.*, 102 S.W.3d at 709.  The jury had the discretion to award damages within the range of evidence presented at trial, and it was entitled to rely on Johnson's testimony that the total diminished value of the three horses was $130,000, as well as Proost's testimony that the total diminished value was $40,000, in arriving at its finding of $70,000 in damages.  *See Khorshid, Inc. v. Christian*, 257 S.W.3d 748, 761 (Tex. App.—Dallas 2008, no pet.) (explaining that jury has broad discretion to award damages within the range of evidence presented at trial, so long as a rational basis exists for its calculation); *Mayberry v. Tex. Dep't of Agric.*, 948 S.W.2d 312, 317 (Tex. App.—Austin 1997, writ denied) (same).

---

[14]Specifically, Proost agreed that the sales prices paid by the Whitmires for Can Yall CD Freckles and Hickory Kit Rio ($55,000 and $35,000, respectively) in 2004 were their fair market values at the time of their purchases.  However, he valued Dual Hickory Nita at $50,000—rather than the $120,000 purchase price that the Whitmires paid—at the time of its purchase.  Proost testified that at the time of his 2008 deposition, Can Yall CD Freckles was worth $40,000; Dual Hickory Nita was worth $25,000; and Hickory Kit Rio was worth $35,000.  Thus, Proost testified that the total diminished value of the three horses was $40,000, and the primary monetary difference between his valuation and Johnson's valuation was the $70,000 difference between his original valuation of Dual Hickory Nita ($50,000) and Johnson's ($120,000).

### D. JNOV on Breach of Contract Claim Erroneously Entered

Having determined that more than a scintilla of evidence exists to support the jury's findings on Lainie's breach of oral agreement claim and resulting damages, we sustain this part of her first issue and hold that the trial court erred by disregarding these findings and entering JNOV that Lainie take nothing on her breach of oral agreement claim.

### IV. CROSS-APPEAL: EXCLUDED EVIDENCE OF THE NCHA

Having held that the trial court erred by entering JNOV on Lainie's breach of oral agreement claim, we must address the remainder of the NCHA's conditional cross-appeal, in which it argues that it was entitled to a new trial based on the erroneous exclusion of the following evidence: (1) a brief submitted by Lainie's attorney, Walker, to the NCHA executive committee in connection with the August 21, 2006 appeal hearing; (2) the transcript of the August 21, 2006 hearing; (3) the corresponding testimony of Goins about the brief and the hearing; and (4) the testimony of NCHA executive committee member and past president Lindy Burch.

### A. Standard of Review

Whether to admit or exclude evidence is a matter committed to the trial court's sound discretion. *See Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001). To obtain reversal of a judgment based upon an error in the trial court, the appellant must show that the error occurred and that it probably caused rendition of an improper judgment or probably prevented the appellant from properly presenting the case to this court. Tex. R. App. P. 44.1(a); *Romero v. KPH Consolidation, Inc.,* 166 S.W.3d 212, 225 (Tex. 2005). Typically, a successful challenge to a trial court's evidentiary rulings requires the

22

complaining party to demonstrate that the judgment turns on the particular evidence excluded or admitted. *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000). And, ordinarily, we will not reverse a judgment because a trial court erroneously excluded evidence when the evidence in question is cumulative and not controlling on a material issue dispositive to the case. *Id.* at 617–18; *Reina v. Gen. Accident Fire & Life Assurance Corp.*, 611 S.W.2d 415, 417 (Tex. 1981).

### B. Evidence Relating to August 21, 2006 Hearing

On August 21, 2006, the NCHA held an appeal hearing before the executive committee regarding the denial of Lainie's non-professional status and the non-professional committee's recommendation that her NCHA membership be revoked for one year; Lainie appeared at that hearing with her attorney, Walker. Walker also submitted a "Brief in Support of Appeal of Denial of Non-Professional Application and Suspension of NCHA Membership" to the executive committee in connection with the hearing. The brief included a chronology of events relating to the suspension of Lainie's non-professional status leading up to the hearing and an analysis of the NCHA rules on non-professional-status qualifications. The brief did not mention any oral agreement for automatic reinstatement of Lainie's non-professional status, and Walker did not mention any such oral agreement at the hearing.

At trial, the NCHA attempted to introduce Walker's full brief as its Exhibit 27A and a redacted portion of that brief as its Exhibit 27.[15] The NCHA also

---

[15]Redacted Exhibit 27 was the following paragraph 9 of Walker's brief:

attempted to introduce the full transcript of the August 21, 2006 hearing as its Exhibit 114 and a portion of the transcript redacted to include only Walker's statements about the agreement entered into between Goins and Brewster as NCHA's Exhibit 114A. Walker had argued at the hearing that the agreement reached between Brewster and Goins, including that Lainie's non-professional status would be revoked, was "just an agreement reached between counsel, basically to try to smooth things over and end the fight"; when asked if he was arguing that the agreement was not binding, Walker said, "I'm not denying that it was binding, sir." The NCHA made an offer of proof and called Goins to testify about Walker's brief and the hearing.

The NCHA argued at trial and asserts on appeal that these exhibits, as well as the related testimony of Goins, constituted an admission on Lainie's part that automatic reinstatement of her non-professional status was not part of the settlement agreement and were admissible to show that Walker and Lainie did not mention an oral agreement for automatic reinstatement of her non-professional status at the hearing. However, Hooper and Goins both testified at

9. Mr. Goins responded by correspondence dated January 19, 2005 documenting an agreement reached between the parties regarding Ms. Whitmire's "Disciplinary Proceedings" whereby: (i) her NCHA membership was suspended for a period of six months and would be reinstated at the end of the six month period; (ii) her Non-Pro status was revoked and she was "deemed non-qualified for non-professional status under the present NCHA rules; (iii) her amateur status is revoked. She is advised that "should the NCHA rules change in the future this proceeding will not prejudice [her] ability to qualify for various designations as they may in the future exist." **See Exhibit 9.**

24

trial that neither Lainie nor anyone on her behalf ever complained to anyone associated with the NCHA that Goins's letter did not contain the full agreement reached between the parties or otherwise assert that she was entitled to automatic reinstatement of her non-professional status. Hooper testified that after Lainie returned to the NCHA in July 2005 following her six-month membership suspension, neither Lainie nor anyone on her behalf ever requested that the NCHA honor its agreement to reinstate her non-professional status. Hooper explained in detail the correspondence between Lainie, or her attorney on her behalf, and the NCHA beginning with Lainie's first application for non-professional status in October 2005 following her six-month membership suspension and concluding with a July 7, 2006 letter from Hooper to Lainie informing her of the August 21, 2006 appeal hearing. Hooper repeatedly testified that at no time during those communications did Lainie or anyone on her behalf mention an agreement that her non-professional status be automatically reinstated. Hooper testified, "The first time it came up was when this lawsuit . . . was filed, and that was in, I believe, October of 2006. So January 2005, agreement reached, settlement, everything's done. Went about their business. October of 2006, [she claimed] . . . in the lawsuit, [']Oh, by the way, we've got this secret agreement.[']" Goins also testified that throughout the correspondence between January 19, 2005 and the filing of this lawsuit, no one ever mentioned an agreement that was different than that contained in his January 19, 2005 letter. Lainie's October 2005 non-professional application and the written correspondence between her and the NCHA following the denial of her application were admitted into evidence. And Lainie herself testified that she never mentioned the oral agreement when she reapplied for non-professional

25

status after her six-month membership suspension was over, explaining that she did not want to get attorneys involved; the NCHA cross-examined her about her correspondence to the NCHA that did not mention any oral agreement for reinstatement of her non-professional status.

Thus, the jury was presented with evidence, including the testimony of Lainie herself and written correspondence from Lainie to the NCHA, that she and her attorney did not assert the existence of the oral agreement before filing this lawsuit. The record demonstrates that the NCHA was allowed to make a fair presentation of its argument, and the NCHA has not shown that the judgment turned on the exclusion of this evidence. *See* Tex. R. App. P. 44.1(a); *Romero*, 166 S.W.3d at 225; *Able*, 35 S.W.3d at 617–18; *cf. Sims v. Brackett*, 885 S.W.2d 450, 455 (Tex. App.—Corpus Christi 1994, writ denied) (noting in harm analysis of exclusion of evidence that "[i]f a party is denied the right to make a fair presentation to the jury, the court has not acted reasonably and has abused its discretion").[16] The excluded testimony and exhibits would not have added substantial weight to the NCHA's case, which included three days of witness

---

[16]The NCHA relies on *Sims* and *Bohmfalk v. Linwood*, 742 S.W.2d 518 (Tex. App.—Dallas 1987, no writ), for the proposition that the excluded evidence added substantial weight to its case on a "hotly contested" issue and did not merely repeat prior witnesses's testimony. The NCHA argues that the excluded evidence, "if believed by the jury, would have destroyed [Lainie's] case on the oral agreement." But we cannot see how this evidence would have added substantial weight to its case when Lainie herself testified that she did not mention the oral agreement initially and when the NCHA thoroughly developed this defense through other witnesses and exhibits. *Cf. Sims*, 885 S.W.2d at 453, 455–56 (holding exclusion of second expert's testimony was harmful where second expert did not have a personal relationship with plaintiff like first expert did and when trial court also denied appellant redirect and recross examination to rebut appellees' defenses and present his case).

26

testimony and exhibit presentations, but were instead cumulative of other evidence in the record. *See Able*, 35 S.W.3d at 617–18; *Reina*, 611 S.W.2d at 417. Even assuming that the trial court abused its discretion by excluding the evidence, any error was harmless. *See* Tex. R. App. P. 44.1(a). We overrule this portion of the NCHA's conditional cross-appeal.

### C. Lindy Burch Testimony

At trial, the NCHA attempted to call Lindy Burch, arguing that her testimony was admissible to rebut the testimony of the NCHA's vice president Harold Eugene Turner Jr. about Goins' character.[17] Turner had testified that Goins is "an excited kind of guy" and that Turner felt Goins should not be involved in cases like Lainie's because he competes in the amateur and non-professional classes of the NCHA and because of his demeanor. Turner said that one of his goals as an officer in the NCHA was to end its relationship with Goins.

The NCHA made an offer of proof, stating that Burch would have testified that she has been a director and officer in the NCHA for several years and is a past president; that she has had extensive dealings with Goins as part of her involvement in the NCHA; and that Goins has never entered into negotiations or agreements beyond the scope of his authorization and has never failed to inform the NCHA of facts material to any matter he was working on for the NCHA. The Whitmires objected that the testimony constituted hearsay and was irrelevant, cumulative, misleading, and prejudicial; the trial court sustained their objection.

Assuming without deciding, for purposes of this case, that the trial court abused its discretion by excluding Burch's testimony, any error was harmless.

---

[17] Portions of the videotaped deposition of Turner were played for the jury.

27

*See* Tex. R. App. P. 44.1(a). The jury had already heard Hooper's testimony that was cumulative of Burch's proposed testimony; Hooper testified that he has known Goins since 2000, when Hooper began working at the NCHA, and that during the time that Hooper has been an executive director with the NCHA, he has never known of Goins making an agreement on behalf of the NCHA without the executive committee's approval. Hooper also testified that Goins "was a good communicator."

Thus, even assuming error, because Burch's testimony was cumulative of Hooper's testimony, we cannot say that the exclusion of her testimony harmed the NCHA. *See Able*, 35 S.W.3d at 617–18; *Reina*, 611 S.W.2d at 417; *see also Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004) (explaining that the exclusion of merely cumulative evidence cannot constitute harmful error). We overrule the remainder of the NCHA's conditional cross-appeal.

## V. Take-Nothing Judgment
### Properly Rendered on False Imprisonment Claim

Lainie argues in the remainder of her first issue that the trial court erred by granting JNOV on her false imprisonment claim. The trial court's final judgment orders that Lainie "take nothing against the NCHA on her claim[] for . . . false imprisonment." The jury found that the NCHA had falsely imprisoned Lainie but also found no damages suffered by Lainie. Thus, the jury's no-damages finding fully supports the court's take-nothing judgment. *See Intercontinental Group P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 655 (Tex. 2009) (explaining that trial court should have rendered take-nothing judgment against plaintiff on its contract claim when jury found breach of contract but answered "0" on damages);

28

*San Antonio Press, Inc. v. Custom Bilt Mach.*, 852 S.W.2d 64, 66 (Tex. App.—San Antonio 1993, no writ) (stating that trial court's take-nothing judgment was supported by jury's no-damages finding).

Lainie did not challenge the no-damages finding in a motion for new trial or on appeal, and we need not otherwise address her challenge to the trial court's take-nothing judgment properly entered in accordance with the jury's no-damages finding. *See San Antonio Press, Inc.*, 852 S.W.2d at 66; *see also, e.g.*, *Wisenbarger v. Gonzales Warm Springs Rehab. Hosp., Inc.*, 789 S.W.2d 688, 694 (Tex. App.—Corpus Christi 1990, writ denied) (noting, in affirming take-nothing judgment, that "[t]he damage findings are not challenged on appeal, the findings are final, and we are bound by such findings"). We overrule the remainder of Lainie's first issue.

## VI. THE NCHA'S ATTORNEY'S FEES

In their third issue, the Whitmires argue that the trial court abused its discretion by awarding the NCHA $302,000 in attorney's fees for prevailing, via summary judgment, on Lainie's declaratory judgment action and $45,000 in attorney's fees for prevailing, via summary judgment, on Ray's declaratory judgment action.[18]

We review an award of attorney's fees under the Uniform Declaratory Judgments Act (the Act) for an abuse of discretion. *Barshop v. Medina Cnty.*

---

[18]Lainie filed suit on October 10, 2006; the trial court granted the NCHA's motion for summary judgment on Lainie's declaratory judgment action on April 21, 2008. Ray asserted a declaratory judgment action on October 17, 2007, and the trial court granted the NCHA's motion for summary judgment on Ray's action on August 23, 2010.

*Underground Water Conservation Dist.*, 925 S.W.2d 618, 637 (Tex. 1996); *Orix Capital Mkts., LLC v. La Villita Motor Inns, J.V.*, 329 S.W.3d 30, 48 (Tex. App.—San Antonio 2010, pet. denied).

Attorney's fees may not be recovered unless provided for by statute or by contract between the parties. *Dallas Cent. Appraisal Dist. v. Seven Inv. Co.*, 835 S.W.2d 75, 77 (Tex. 1992). "Absent a mandatory statute, a trial court's jurisdiction to render a judgment for attorney's fees must be invoked by pleadings, and a judgment not supported by pleadings requesting an award of attorney's fees is a nullity." *Alan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd.*, 287 S.W.3d 877, 884 (Tex. App.—Dallas 2009, no pet.).

In a suit under the Act—chapter 37 of the civil practice and remedies code—a trial court may award reasonable and necessary attorney's fees that are just and equitable. Tex. Civ. Prac. & Rem. Code Ann. § 37.009. Under the Act, an award of attorney's fees is not limited to the prevailing party. *See Hartford Cas. Ins. Co. v. Budget Rent-A-Car Sys., Inc.*, 796 S.W.2d 763, 771 (Tex. App.—Dallas 1990, writ denied). Where a claimant or a counter-claimant properly invokes the declaratory judgments statute, either party may plead for and obtain attorney's fees. *Id.*

In its answer and counterclaim, the NCHA pleaded specifically for attorney's fees as part of its counterclaim, "[p]ursuant to Chapter 38 of the Texas

30

Civil Practice and Remedies Code,[19] and Rule 41 of the NCHA Rules." It did not

seek attorney's fees under the Act, and it did not make a general request for

attorney's fees in its prayer. *Cf., e.g.*, *Nolte v. Flournoy*, 348 S.W.3d 262, 270,

n.3 (Tex. App.—Texarkana 2011, pet. denied) ("A party is also not required to

request attorney's fees with specificity to be eligible for an award under the

Declaratory Judgments Act, *so long as a general request for attorney's fees*

*exists*.") (emphasis added); *Zurita v. SVH-1 Partners, Ltd.*, No. 03-10-00650-CV,

2011 WL 6118573, at *8 (Tex. App.—Austin Dec. 8, 2011, pet. denied) (mem.

op.) (upholding attorney's fees awarded to defendant for defending declaratory

judgment action when defendant's pleadings requested award of attorney's fees,

noting "It is undisputed that [plaintiff] sought declaratory relief against [defendant]

under the UDJA. Thus, the trial court was authorized to award attorneys' fees to

any party *with pleadings requesting them*.") (emphasis added).

The NCHA's specific request for attorney's fees under chapter 38 and

under the NCHA rules was insufficient to invoke the attorney's fees provision of

the Act. *See Hartford*, 796 S.W.2d at 765, 771 (holding defendant who pleaded

only contractual right to attorney's fees did not invoke attorney's fees provision of

the Act for defending plaintiff's declaratory judgment action); *Janicek v. 2016*

*Main Owners Ass'n, Inc.*, No. 01-96-00599-CV, 1997 WL 414951, at *5 (Tex.

---

[19]*See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) ("A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract.").

App.—Houston [1st Dist.] July 24, 1997, no writ) (not designated for publication) (holding defendant, who pleaded specific grounds for attorney's fees, did not invoke the Act's attorney's fees provision by not pleading for fees under the Act); *see also Kreighbaum v. Lester*, No. 05-06-01333-CV, 2007 WL 1829729, at *2 (Tex. App.—Dallas June 27, 2007, no pet.) (mem. op.) (citing *Edlund v. Bounds*, 842 S.W.2d 719, 731 n.5 (Tex. App.—Dallas 1992, writ denied) and explaining that pleader confined to specific allegations, which control over general ones). Based on the specific facts of this case, we hold that the trial court abused its discretion by awarding the NCHA attorney's fees under chapter 37.[20]  *See* Tex. R. Civ. P. 301 (requiring that judgments conform to pleadings).  We sustain this portion of the Whitmires' third issue.[21]

## VII. LAINIE'S ATTORNEY'S FEES

In her fourth issue, Lainie argues that the trial court abused its discretion by not awarding her reasonable and necessary attorney's fees after she prevailed on her breach of contract claim.  The NCHA argues that Lainie is not entitled to attorney's fees because she did not timely plead and prove

---

[20]Despite the pleading deficiency, the issue was not tried by consent; the Whitmires objected to the award of attorney's fees to the NCHA on this basis.

[21]We need not address the remainder of the Whitmires' third issue or Lainie's second issue, in which they argue additional reasons why the trial court's award of attorney's fees to the NCHA should not stand.  *See* Tex. R. App. P. 47.1.

32

presentment of her oral agreement claim and because her attorney's fees claim is unreasonable, excessive, and not segregated as required by law.

To recover reasonable attorney's fees for a claim based on an oral or written contract, (1) the claimant must be represented by counsel, (2) the claimant *must present the claim* to the opposing party, and (3) payment for the just amount owed must not have been tendered before the expiration of the thirtieth day after the claim is presented. Tex. Civ. Prac. & Rem. Code Ann. §§ 38.001(8), .002 (West 2008); *see Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex. 1981). If attorney's fees are proper under section 38.001(8), and the requisite elements are proven, the trial court has no discretion to deny them. *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009).

The purpose of the presentment requirement is to allow the person against whom the claim is asserted an opportunity to pay within thirty days of receiving notice of the claim, thereby avoiding the obligation to pay attorney's fees. *Goodin v. Jolliff*, 257 S.W.3d 341, 349 (Tex. App.—Fort Worth 2008, no pet.) (citing *Carr v. Austin Forty*, 744 S.W.2d 267, 271 (Tex. App.—Austin 1987, writ denied)). The party seeking attorney's fees must plead and prove that he or she presented a contract claim to the opposing party and that the opposing party failed to tender performance. *Id.*; *see Chandler v. Mastercraft Dental Corp. of Tex. Inc.*, 739 S.W.2d 460, 470 (Tex. App.—Fort Worth 1987, writ denied). No particular form of presentment is required. *Goodin*, 257 S.W.3d at 349; *Jim Howe Homes, Inc. v. Rogers*, 818 S.W.2d 901, 905 n.3 (Tex. App.—Austin 1991, no writ). Oral presentment of a claim is sufficient to satisfy the requirement. *Jones*, 614 S.W.2d at 100. However, neither the filing of a suit, nor the allegation

of a demand in the pleadings can, alone, constitute presentment of a claim or a demand that a claim be paid. *Goodin*, 257 S.W.3d at 349; *Austin Forty*, 744 S.W.2d at 271.

Here, Lainie had the burden to plead and prove that she made presentment of her claim of an oral agreement to the NCHA and that the NCHA did not comply with the claim within thirty days. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.002; *Jim Howe Homes*, 818 S.W.2d at 904. Even assuming Lainie properly pleaded presentment, which the NCHA disputed at trial and disputes on appeal, the NCHA affirmatively denied presentment. Thus, Lainie had the burden to produce specific evidence of presentment. *See* Tex. R. Civ. P. 54 (providing that party pleading all conditions precedent have been performed is not required to prove conditions precedent *unless* specifically denied by opposing party); *Llanes v. Davila*, 133 S.W.3d 635, 641 (Tex. App.—Corpus Christi 2003, pet. denied).

As evidence of presentment, Lainie points to allegations in her pleadings and evidence presented at trial that, at the conclusion of her six-month membership suspension, she applied for non-professional status "believing that her non-professional status would be continued as agreed between Mr. Brewster and Mr. Goins." But nothing in the record indicates that she referenced the oral agreement in her applications or made demand that the NCHA comply with its oral agreement prior to filing suit for breach of oral agreement. *See Goodin*, 257 S.W.3d at 349. Consequently, we overrule Lainie's fourth issue.

## VIII. CONCLUSION

Having sustained that portion of Lainie's first issue challenging the trial court's JNOV on her breach of oral agreement claim, having held that the trial

34

court erred by disregarding the jury's findings that the NCHA breached an oral agreement with Lainie and that Lainie sustained damages in the amount of $70,000.00 as a result, and having overruled the NCHA's conditional cross-issues, we reverse the trial court's judgment in part and render judgment on the jury's findings that Lainie recover $70,000 in damages for the NCHA's breach of oral agreement. Having overruled the remainder of Lainie's first issue challenging the trial court's take-nothing judgment on her false imprisonment claim and her fourth issue on her attorney's fees, and having sustained the Whitmires' third issue on the NCHA's attorney's fees, we modify the trial court's judgment to delete the NCHA's recovery of attorney's fees of $302,000 from Lainie and of $45,000 from Ray and affirm the remainder of the judgment as modified.

SUE WALKER
JUSTICE

PANEL:  DAUPHINOT, WALKER, and GABRIEL, JJ.

DELIVERED:  October 11, 2012